**KAUFMAN DOLOWICH LLP**
Katherine S. Catlos (SBN 184227)
Tiffany Schneider (SBN 323833)
425 California Street, Suite 2100
San Francisco, California 94104
Telephone:(415) 926-7600
Facsimile: (415) 926-7601
Emai: kcatlos@kaufmandolowich.com
tiffany.schneider@kaufmandolowich.com

Attorneys for Defendant, DOMUSO, INC.

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JONATHAN BEACHER,<br><br>Plaintiff,<br><br>v.<br><br>DOMUSO, INC.,<br><br>Defendant. | Case No.: 2:26-cv-09014-AH-PVC<br><br>Action Filed: August 13, 2026<br><br>[Assigned to Honorable Anne Hwang; Courtroom: 9C]<br><br>**DEFENDANT DOMUSO INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE, RULE 12(c)**<br><br>Date: December 2, 2026<br>Time: 1:30 p.m.<br>Place: Courtroom 9C, 9th Floor<br>Judge: Honorable Anne Hwang |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 5

II. FACTUAL BACKGROUND ..... 6

A. Procedural Posture ..... 6

B. Plaintiff's Testing Dispute and CFPB Submission ..... 6

III. LEGAL STANDARD ..... 7

IV. ARGUMENT ..... 8

A. Plaintiff Fails To Plausibly Allege Protected Activity Under Section 5567. ..... 8

1. The alleged objections concern software-testing methodology, not a violation of consumer-finance law. ..... 8

2. The Complaint does not plausibly allege an objectively reasonable belief in a CFPB-enforceable violation ..... 11

3. Plaintiff's Regulation E, Regulation Z, and UDAAP theories are post hoc legal conclusions unsupported by the conduct actually challenged. ..... 13

4. Unrelated reports, prior incidents, and Terms-of-Service allegations do not cure the defect. ..... 14

B. The Complaint Does Not Plausibly Allege That The Decisionmakers Knew Of Any Protected Activity ..... 15

C. Judgment Should Be Entered Because Amendment Is Futile. ..... 16

V. CONCLUSION ..... 18

CERTIFICATE OF COMPLIANCE ..... 19

# TABLE OF AUTHORITIES

Page

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 7, 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 7

*Boyd v. Accuray, Inc.*,
593 F. App'x 647 (9th Cir. 2015) .......... 14

*Day v. Staples, Inc.*,
555 F.3d 42 (1st Cir. 2009) .......... 12

*Dworkin v. Hustler Magazine, Inc.*,
867 F.2d 1188 (9th Cir. 1989) .......... 7

*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) .......... 16

*Foman v. Davis*,
371 U.S. 178 (1962) .......... 16

*McInerney v. Regents of the Univ. of Cal.*,
No. B339467, 17 (Cal. Ct. App. Sept. 18, 2026) .......... 13

*Platone v. U.S. Dep't of Labor*,
548 F.3d 322 (4th Cir. 2008) .......... 11

*Satvati v. Allstate Northbrook Indem. Co.*,
634 F. Supp. 3d 792 (C.D. Cal. 2022) .......... 7

*Schuett v. FedEx Corp.*,
119 F. Supp. 3d 1155 (N.D. Cal. 2016) .......... 7

*Seila Law LLC v. Consumer Fin. Prot. Bureau*,
591 U.S. 197 (2020) .......... 9

*Van Asdale v. Int'l Game Tech.*,
577 F.3d 989 (9th Cir. 2009) .......... 12, 15

**Statutes**


12 U.S.C. § 1831 .......... 10
12 U.S.C. § 2601 .......... 11
12 U.S.C. § 2801 .......... 10
12 U.S.C. § 3801 .......... 10
12 U.S.C. § 4301 .......... 11
12 U.S.C. § 4901 .......... 10
12 U.S.C. § 5531 .......... 12, 13, 14, 15
12 U.S.C. § 5567 .......... passim
12 U.S.C. §5101 .......... 11
12 U.S.C.S. § 5481 .......... 11
12 U.S.C.S. § 5511 .......... 10
15 U.S.C. § 1666 .......... 10
15 U.S.C. § 1601 .......... 10
15 U.S.C. § 1667 .......... 10
15 U.S.C. § 1681 .......... 10
15 U.S.C. § 1691 .......... 10
15 U.S.C. § 1692 .......... 10
15 U.S.C. § 1693 .......... 10
15 U.S.C. § 1701 .......... 11
15 U.S.C. § 6802 .......... 10
29 C.F.R. § 1980 .......... 16
29 C.F.R. § 1985 .......... 9
Fed. Rule Civ. P. 12 .......... 8

## I. INTRODUCTION

Plaintiff Jonathan Beacher's Consumer Financial Protection Act retaliation claim against Domuso, Inc. fails on the face of the pleadings. The Complaint alleges internal disagreements over quality-assurance testing sequence, release approvals, and automation priorities. It does not plausibly allege that Plaintiff engaged in activity protected by 12 U.S.C. § 5567(a), nor does it plausibly allege that the relevant termination decisionmakers knew of his confidential Consumer Financial Protection Bureau ("CFPB") submission.

The central pleading defect is legal, not factual. Plaintiff objected to releasing the DCash ACH feature after manual testing and quality-assurance approval but before feature-specific automated regression tests were completed. No law, rule, order, standard, or prohibition within the CFPB's jurisdiction requires automated regression testing before a software release. Plaintiff instead relies on a hypothetical chain in which delayed automation might allow a future defect, the defect might escape detection, an inaccurate payment record might result, and a consumer-finance law might then be implicated. The Complaint does not allege that this chain materialized. It alleges no erroneous electronic fund transfer caused by the challenged release, no denial of an error-resolution right, no consumer misrepresentation attributable to that release, and no specific regulatory requirement governing the sequencing of manual and automated testing.

Plaintiff's own allegations further narrow the dispute. He concedes that his CFPB submission did not identify Regulation E by name, that he does not assert a standalone EFTA, TILA, Regulation E, or Regulation Z claim, and that he did not object to Domuso's Terms of Service as a separate practice. The extensive regulatory theories pleaded after the fact cannot transform contemporaneous objections about testing workflow into protected whistleblowing activity.

Moreover, although Plaintiff alleges that Domuso personnel knew he resisted the testing process, knowledge of a workflow dispute is not knowledge of protected activity

where the known objections did not communicate an objectively reasonable belief in a CFPB-enforceable violation. Judgment on the pleadings is warranted.

## II. FACTUAL BACKGROUND

### A. Procedural Posture

Plaintiff Jonathan Beacher ("Plaintiff" or "Beacher") filed this action on August 13, 2026, asserting a single retaliation claim under 12 U.S.C. § 5567. [ECF No. 1.] Defendant Domuso, Inc. ("Defendant" or "Domuso") answered and filed a First Amended Answer on October 1, 2026. [ECF No. 20.] The pleadings are closed, and the motion is therefore proper under Federal Rule of Civil Procedure 12(c). On September 15, 2026, counsel for Domuso met and conferred with Beacher on the grounds for which this motion is brought. The parties did not reach an agreement. Beacher expressed his intention to oppose the motion. Declaration of Katherine Catlos, ¶2.

### B. Plaintiff's Testing Dispute and CFPB Submission

Domuso employed Plaintiff as a Quality Assurance Engineer. [ECF No. 1, ¶¶ 29-31.] He alleges that Domuso directed him to perform manual testing and provide quality-assurance approval before feature-specific automated regression tests were completed for the DCash ACH functionality. [*Id.*, ¶¶ 77-88.] Plaintiff performed the manual testing, provided quality-assurance approval, and the feature was released by the deadline, but he repeatedly objected to the sequencing of automation and release approval. [*Id.*, ¶¶ 77-107.]

Plaintiff alleges that his internal objections concerned compressed deadlines, missing design artifacts, automation locators, and a testing process in which he disagreed. [*Id.*, ¶¶ 97-107.] He alleges that Domuso personnel knew he opposed the testing process and that delays associated with his resistance were later cited as a factor in the reduction-in-force decision. [*Id.* ¶¶ 119-133.]

On or around October 11, 2024, Plaintiff made a confidential submission to the CFPB. [*Id.*, ¶¶ 108-118.] He described Domuso's testing practice, characterized it as reckless, and requested an investigation into potential violations of regulations

governing payment processing and financial recordkeeping. [*Id.*, ¶¶ 108-117.] He requested anonymity and did not identify Regulation E by name. [*Id.*, ¶¶ 111-112.]

The Complaint alleges a prior rewards-record issue and refers to news reports concerning a different tenant account, but does not allege that either incident resulted from the challenged DCash release. [*Id.*, ¶¶ 50-76.] Plaintiff further alleges that the feared financial injury from the DCash release did not materialize, that he is not asserting a standalone claim under the Electronic Fund Transfer Act ("EFTA",) Truth in Lending Act ("TILA"), Regulation E, or Regulation Z, and that he did not object to Domuso's Terms of Service as a separate practice. [*Id.*, ¶¶ 195, 201.]

Plaintiff identifies Godinez and Babineau as the individuals who authorized his termination. [*Id.*, ¶ 128.] The Complaint does not allege that either person knew Plaintiff had submitted a confidential CFPB complaint before the termination decision.

## III. **LEGAL STANDARD**

"A judgment on the pleadings is appropriate when the pleaded facts, accepted as true and viewed in the light most favorable to the non-moving party, entitle the moving party to a judgment as a matter of law." (*Schuett v. FedEx Corp.,* 119 F. Supp. 3d 1155, 1159 (N.D. Cal. 2016); see also Fed. Rule Civ. P. 12(c).) "A motion for judgment on the pleadings is 'functionally identical' to a Rule 12(b)(6) motion to dismiss for failure to state a claim, meaning the same pleading standards apply." (*Satvati v. Allstate Northbrook Indem. Co*., 634 F. Supp. 3d 792, 796 (C.D. Cal. 2022) (quoting *Dworkin v. Hustler Magazine, Inc*., 867 F.2d 1188, 1192 (9th Cir. 1989))

To survive a Rule 12 motion, a plaintiff must state "enough facts to state a claim to relief that is plausible on its face." (*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).) A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).)

In resolving a motion for judgment on the pleadings, a court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause

of action, supported by mere conclusory statements, do not suffice." (*Id*. at 678.) A pleading must contain allegations that have "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (*Iqbal*, 556 U.S. at 678.) Assuming the veracity of well-pleaded factual allegations, a court next must "determine whether they plausibly give rise to an entitlement to relief." (*Id*. at 679.) There is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." (*Id*.)

The Consumer Financial Protect Act ("CFPA") prohibits a covered person or service provider from retaliating against a covered employee because the employee provided information relating to a violation, or an act or omission the employee reasonably believed to be a violation, of a provision subject to the CFPB's jurisdiction, or because the employee objected to or refused to participate in conduct the employee reasonably believed violated a law, rule, order, standard, or prohibition within the Bureau's jurisdiction. (12 U.S.C. § 5567(a)(1), (4).) The regulation likewise ties protected activity to consumer financial products or services. (29 C.F.R. § 1985.100-.102.)

Thus, the pleaded claim requires at least: (1) protected activity within § 5567(a); (2) employer knowledge of the protected activity; (3) an unfavorable personnel action; and (4) facts supporting a plausible inference that the protected activity was a contributing factor. (*See* 12 U.S.C. § 5567(c)(3)(C); 29 C.F.R. § 1985.104(e), 1985.109(a).) The clear-and-convincing same-action defense becomes relevant only after protected activity and contributing-factor causation are established; it does not relieve Plaintiff of pleading the elements of his claim.

## IV. ARGUMENT

### A. Plaintiff Fails To Plausibly Allege Protected Activity Under Section 5567.

#### *1. The alleged objections concern software-testing methodology, not a violation of consumer-finance law.*

Section 5567 protects an employee who provides information relating to a violation, or an act or omission the employee reasonably believes to be a violation, of a provision subject to the CFPB's jurisdiction, and an employee who objects to or refuses to participate in conduct the employee reasonably believes violates a law, rule, order, standard, or prohibition within the Bureau's jurisdiction. (12 U.S.C. § 5567(a)(1), (4).) The statute does not transform every internal disagreement into protected activity merely because the employer offers a consumer financial product or service.

The CFPB is directed to implement and, where applicable, enforce federal consumer financial law. Its stated purpose is to ensure consumer access to markets for consumer financial products and services and to promote markets that are fair, transparent, and competitive. (12 U.S.C.S. § 5511.)

Congress transferred the administration of 18 existing federal statutes to the CFPB. (*Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 207 (2020).) The statutory definition of "enumerated consumer laws" include:

> (A) the Alternative Mortgage Transaction Parity Act of 1982 (12 U.S.C. 3801 et seq.);
> (B) the Consumer Leasing Act of 1976 (15 U.S.C. 1667 et seq.);
> (C) the Electronic Fund Transfer Act (15 U.S.C. 1693 et seq.), except with respect to section 920 of that Act [15 U.S.C.S. 1693r];
> (D) the Equal Credit Opportunity Act (15 U.S.C. 1691 et seq.);
> (E) the Fair Credit Billing Act (15 U.S.C. 1666 et seq.);
> (F) the Fair Credit Reporting Act (15 U.S.C. 1681 et seq.), except with respect to sections 615(e) and 628 of that Act (15 U.S.C. 1681m(e), 1681w);
> (G) the Home Owners [Homeowners] Protection Act of 1998 (12 U.S.C. 4901 et seq.);
> (H) the Fair Debt Collection Practices Act (15 U.S.C. 1692 et seq.);
> (I) subsections (b) through (f) of section 43 of the Federal Deposit Insurance Act (12 U.S.C. 1831t(c)-(f));
> (J) sections 502 through 509 of the Gramm-Leach-Bliley Act (15 U.S.C. 6802-6809) except for section 505 [15 U.S.C.S. 6805] as it applies to section 501(b) [15 U.S.C.S. § 6801(b)];
> (K) the Home Mortgage Disclosure Act of 1975 (12 U.S.C. 2801 et seq.);
> (L) the Home Ownership and Equity Protection Act of 1994 (15 U.S.C. 1601 note);

(M) the Real Estate Settlement Procedures Act of 1974 (12 U.S.C. 2601 et seq.);
(N) the S.A.F.E. Mortgage Licensing Act of 2008 (12 U.S.C. 5101 et seq.);
(O) the Truth in Lending Act (15 U.S.C. 1601 et seq.);
(P) the Truth in Savings Act (12 U.S.C. 4301 et seq.);
(Q) section 626 of the Omnibus Appropriations Act, 2009 (Public Law 111-8); and
(R) the Interstate Land Sales Full Disclosure Act (15 U.S.C. § 1701).

(12 U.S.C.S. § 5481.) The statute's text makes this definition subject to exceptions "otherwise specifically provided in section 5519." (12 U.S.C.S. § 5481.) Those exceptions are not applicable here.

The Complaint identifies the challenged practice as Domuso required manual testing and quality-assurance approval before release, while permitting feature-specific automated regression testing to follow. [ECF No. 1, ¶¶ 77-107, 188-189.] Plaintiff repeatedly characterizes that choice as reckless and contrary to sound engineering practice. But he identifies no Bureau-enforceable statute, regulation, order, standard, or prohibition requiring automated regression testing before release.

In the Complaint, Plaintiff now vaguely refers to various regulations, none of which he mentioned to the CFPB or relate to his complaint to the Bureau. Regulation E establishes substantive rights and procedures for electronic fund transfers, and Regulation Z regulates consumer credit. Neither, as pleaded, regulates software-development methodology, regression-test sequencing, or release gates.

Plaintiff alleges that he completed the required manual testing, gave quality-assurance approval, and the feature was released. [ECF No. 1, ¶¶ 77-88.] His disagreement concerned whether automation should have been completed first. Those allegations describe an internal product-development and quality-assurance dispute. They do not, without a plausible and objectively reasonable nexus to a CFPB-enforceable requirement, allege protected whistleblowing activity. Were it otherwise, every internal quality-assurance disagreement at any company offering a consumer financial product would become protected activity. Federal whistleblower law does not

sweep so broadly. (*See Platone v. U.S. Dep't of Labor*, 548 F.3d 322, 326–27 (4th Cir. 2008) (affirming denial of whistleblower protection where the employee's reports concerned internal irregularities rather than conduct covered by the statute).)

***2. The Complaint does not plausibly allege an objectively reasonable belief in a CFPB-enforceable violation.***

The reasonable-belief requirement is not satisfied by alleging that a lawful practice might someday contribute to a violation. Plaintiff's theory requires a series of contingent events: delayed automation might permit a later software defect; the defect might escape manual and other testing; the defect might create an inaccurate payment record; and the inaccurate record might then impair a consumer right. [ECF No. 1, ¶¶ 83-85, 195-200.] The Complaint does not allege that this chain occurred. It alleges no erroneous electronic fund transfer caused by the challenged release, no denial of an error-resolution request, no inaccurate consumer record attributable to the release, and no concrete consumer injury from the DCash functionality. [ECF No. 1, ¶¶ 195, 200-201.] The point is not that Plaintiff must plead actual consumer harm. It is that the conduct he objected to, specifically when to build automated regression tests, is not conduct that Regulation E, Regulation Z, or § 5531 regulates, so no amount of downstream speculation converts it into a reported violation.

Section 5567 does not require an employee to prove an actual violation, but the pleaded facts must make the asserted belief objectively reasonable. Plaintiff does not identify a legal requirement that Domuso violated when it approved release after manual testing rather than waiting for completed automation. The possibility that software could later malfunction establishes operational risk, not a plausible belief that the existing release process itself violated consumer-finance law.

Plaintiff's admissions reinforce the disconnect. He alleges that his CFPB submission did not identify Regulation E by name. [ECF No. 1, ¶ 111.] He disclaims standalone claims under EFTA, TILA, Regulation E, and Regulation Z. [*Id.*, ¶ 201.] He also alleges that he did not object to Domuso's Terms of Service as a separate practice.

[*Id.*, ¶ 201.] These admissions do not independently foreclose protection, but they underscore the absence of facts tying his contemporaneous testing objections to a particular Bureau-enforceable requirement. An employee need not cite a statute by name, but his report must convey, in substance, that the employer is violating a covered law such as, for example, that consumers' transfers are being processed erroneously, that error notices are being ignored, or that consumers are being told something false. Plaintiff alleges no communication of that kind. His objections, as pleaded, concerned deadlines, design materials, locators, and the order in which testing occurred.

Federal courts construing the parallel whistleblower provision of the Sarbanes-Oxley Act, which likewise protects disclosures of conduct the employee "reasonably believes" violates enumerated laws, have articulated the governing standard. In this Circuit, the employee's communications must "definitively and specifically" relate to one of the laws the statute covers. (*Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 996–997 (9th Cir. 2009).) And the employee's belief is objectively reasonable only if his theory of the underlying violation "at least approximate[s] the basic elements" of the law allegedly violated. (*Id.* at 1001 (adopting standard of *Day v. Staples, Inc.*, 555 F.3d 42, 55 (1st Cir. 2009)).) In *Van Asdale*, the employees satisfied that standard because their theory tracked the elements of securities fraud: a material omission of information bearing on a valuable patent, plausibly deliberate, made in connection with a corporate merger. (*Id.*) Plaintiff's theory does nothing of the kind. It must at least approximate the elements of an actual violation of Regulation E, Regulation Z, or 12 U.S.C. § 5531, yet Plaintiff identifies no erroneous electronic fund transfer, no unresolved error notice, no extension of consumer credit, and no representation made to any consumer. [ECF No. 1, ¶¶ 195, 200–201.] Nor did his contemporaneous objections convey, in substance, that Domuso was violating any of those provisions, let alone do so "definitively and specifically." [ECF No. 1, ¶¶ 97–111.] A belief that an internal testing sequence might someday allow a defect that might later produce a violation does not approximate the elements of any Bureau-enforceable requirement.

California courts reach the same conclusion under analogous state law. In *McInerney*, the Court of Appeal held that an employee's complaints that a background-check process was unfair did not constitute protected activity, because the challenged conduct was permitted by statute and the employee never complained that the employer had failed to follow any step the law actually required. (*McInerney v. Regents of the Univ. of Cal.*, No. B339467, slip op. at p. 17 (Cal. Ct. App. Sept. 18, 2026), *certified for publication* Oct. 13, 2026; Declaration of Catlos, Ex. B.) Although *McInerney* arose under California's Fair Employment and Housing Act, its reasoning applies with equal force here: a generalized objection that a lawful practice is unwise, unfair, or risky does not communicate an objectively reasonable belief that the employer is violating the law. Plaintiff's allegations that Domuso's testing sequence was reckless, untethered to any Bureau-enforceable requirement governing testing sequence, are no different.

***3. Plaintiff's Regulation E, Regulation Z, and UDAAP theories are post hoc legal conclusions unsupported by the conduct actually challenged.***

The Complaint attempts to connect the testing dispute to Regulation E, Regulation Z, and 12 U.S.C. § 5531. But it does not allege that the challenged release caused an erroneous electronic fund transfer, that Domuso denied a consumer any error-resolution procedure, that the release involved an unlawful extension of credit, or that the testing sequence itself was represented to consumers. The pleaded practice is an internal decision about when to build automated regression tests. The alleged legal violation is a hypothetical downstream event that did not occur. Describing DCash as a "payment" feature does not change what Plaintiff objected to. The reasonable-belief standard forgives an employee's mistakes about what the law requires; it does not extend Regulation E, Regulation Z, or § 5531 to internal engineering decisions that those provisions do not govern.

The Unfair, Deceptive, or Abusive Acts or Practices theory ("UDAAP") is particularly attenuated. Plaintiff alleges that an undetected future defect could cause an inaccurate payment display and thereby become deceptive. [ECF No. 1, ¶¶ 195-199.]

He does not allege that the testing policy made any representation to consumers, that Domuso displayed inaccurate information attributable to the challenged release, or that Domuso denied a consumer a statutory remedy. The gap between the internal testing sequence and the alleged deceptive act is filled only by speculation and legal conclusions.

The Complaint also supplies extensive legal analysis that is not alleged to have appeared in Plaintiff's contemporaneous workplace communications. Those communications concerned release timing, missing design materials, element locators, automation priorities, and Plaintiff's disagreement with a non-negotiable testing process. [*Id.*, ¶¶ 97-109.] His CFPB submission allegedly raised generalized potential compliance concerns but did not identify Regulation E. [*Id.*, ¶¶ 111, 190.] Legal theories developed and pleaded later cannot retroactively convert a workflow dispute into protected activity. Likewise, a request that a regulator investigate "potential violations" signals possible regulatory exposure; it does not report that a particular Bureau-enforceable requirement was violated. Protected activity requires an actual report of a covered violation; a legal theory constructed in litigation is not one. (*See Boyd v. Accuray, Inc.*, 593 F. App'x 647, 648 (9th Cir. 2015) (affirming judgment for employer where employee produced no evidence that the conduct he raised violated a covered law or that he communicated such a concern to the employer).)

***4. Unrelated reports, prior incidents, and Terms-of-Service allegations do not cure the defect.***

Plaintiff cites news reports concerning charges imposed on a tenant and describes an earlier rewards-record incident involving a different feature. [ECF No. 1, ¶¶ 50-76.] The Complaint does not allege that either matter arose from the challenged DCash release or from the sequence in which manual and automated testing occurred. Nor does it allege that either incident violated Regulation E, Regulation Z, § 5531, or another Bureau-enforceable requirement. Those matters may explain Plaintiff's generalized

concern about software quality, but they do not make his belief that the challenged testing sequence was unlawful objectively reasonable.

The Terms-of-Service allegations are similarly disconnected. Plaintiff expressly alleges that he did not object to the Terms as a separate practice and that his CFPB submission did not identify the Terms as the challenged conduct. [ECF No. 1, ¶ 201.] A legal theory that was not the subject of the alleged objection cannot supply the missing protected activity.

**B. The Complaint Does Not Plausibly Allege That The Decisionmakers Knew Of Any Protected Activity.**

Independently, the claim fails because the Complaint does not plausibly allege the knowledge element. A § 5567 plaintiff must plead facts showing that the employer knew or suspected that he engaged in protected activity. (29 C.F.R. § 1985.104(e); *see Van Asdale*, 577 F.3d at 1002–03 (requiring that "[t]he named person knew or suspected, actually or constructively, that the employee engaged in the protected activity" (quoting 29 C.F.R. § 1980.104(b)(1)(ii))).) Knowledge must be tied to the individuals who made the challenged decision; it is not enough to allege that someone, somewhere in the company, may have known.

The only arguably protected act Plaintiff identifies that is directed to a covered law, as opposed to testing workflow, is his October 11, 2024 submission to the CFPB. [ECF No. 1, ¶¶ 108–118.] By his own account, that submission was confidential and he requested anonymity. [*Id.*, ¶¶ 111–112.] Plaintiff identifies Godinez and Babineau as the individuals who authorized his termination. [*Id.*, ¶ 128.] The Complaint does not allege that either of them, or anyone who influenced their decision, knew or suspected before the termination decision that Plaintiff had contacted the CFPB. Absent such facts, the CFPB submission cannot have been a contributing factor in the decision, and any theory of retaliation premised on it fails as a matter of law.

Plaintiff's allegation that Domuso personnel knew he resisted the testing process does not fill the gap. [ECF No. 1, ¶¶ 119–133.] The knowledge element requires

knowledge of *protected activity*, not knowledge of workplace disagreement. As shown in Section A, Plaintiff's internal objections concerned deadlines, design materials, element locators, and the sequencing of manual and automated testing; they did not convey a reasonable belief that Domuso was violating a Bureau-enforceable law. Awareness that an employee disagreed with an engineering process is not awareness that he was blowing the whistle on a consumer-finance violation. Because the Complaint alleges no facts showing that the decisionmakers knew of any protected activity, it fails to plead an essential element of the claim, and judgment on the pleadings is warranted on this independent ground as well.

**C. Judgment Should Be Entered Because Amendment Is Futile.**

Leave to amend is unnecessary where amendment would be futile. Although Rule 15 embodies a liberal amendment policy, leave may be denied for "undue delay, bad faith or dilatory motive," repeated failure to cure deficiencies, prejudice, or "futility of amendment." (*Foman v. Davis*, 371 U.S. 178, 182 (1962).) The Ninth Circuit likewise recognizes futility as a proper basis for denying leave to amend. (*Eminence Capital, LLC v. Aspeon, Inc*., 316 F.3d 1048, 1052 (9th Cir. 2003).) While the Ninth Circuit ordinarily applies a presumption favoring amendment, that presumption does not require courts to permit an amendment incapable of curing the substantive defect in the claim.

This is such a case. Plaintiff's claim fails not because the Complaint omits incidental factual detail that could be supplied through amendment, but because the conduct Plaintiff himself identifies as his protected activity does not plausibly establish the CFPA retaliation theory he seeks to assert. The Complaint already exhaustively alleges the substance of Plaintiff's internal objections, his October 11, 2024 CFPB complaint, his understanding of Regulations E and Z, his UDAAP theory, and the facts upon which he claims his beliefs were based. [ECF No. 1, ¶¶ 95–118, 188–201.]

Most importantly, the Complaint itself establishes the disconnect between the conduct Plaintiff allegedly opposed and the consumer-protection laws on which he now

relies. Plaintiff alleges that his internal objections concerned Domuso's software testing and release methodology, specifically the sequencing of manual testing, automated regression testing, and QA approval. [*Id.*, ¶¶ 95–107.] His pleaded communications complained, among other things, that the October 15 deadline was rushed, that QA lacked materials needed to complete automation, and that releasing payment features without completed automated regression testing could permit defects to reach consumers. [*Id.* ¶¶ 97–106.] But Plaintiff does not allege that, in making those objections, he complained that Domuso was violating Regulation E, Regulation Z, the Electronic Fund Transfer Act, the Truth in Lending Act, or the CFPA's prohibition against unfair, deceptive, or abusive acts or practices.

Instead, the Complaint separately alleges that Plaintiff knew of these consumer-protection provisions and believed Domuso's testing policy was inconsistent with them. [*Id.* ¶¶ 101–105, 195–201.] Those allegations may explain the legal significance Plaintiff now seeks to attribute to his prior workplace objections, but they do not alter what he alleges he actually communicated to Domuso. Because those historical communications are fixed, further amendment cannot cure this deficiency merely by attaching new statutory labels or additional legal conclusions to the same alleged conduct.

Plaintiff cannot cure that deficiency simply by amending the Complaint to attach a federal consumer-finance label to communications whose substance he has already pleaded. Whether the historical conversations constituted protected activity must be evaluated from what Plaintiff alleges occurred, not from legal theories subsequently assigned to those conversations. Multiplying the legal labels attached to the same reported conduct does not change what was reported. The same is true of the knowledge defect: Plaintiff has already pleaded that his CFPB submission was confidential and anonymous, and no amendment consistent with that allegation could establish that the decisionmakers knew of it. The Court should therefore grant Domuso's Rule 12(c) motion without leave to amend and enter judgment in Domuso's favor.

## V. CONCLUSION

The Complaint does not plausibly allege protected activity under 12 U.S.C. § 5567, and it does not plausibly allege that the individuals who made the termination decision knew of any protected activity. Each defect is independently fatal, and further amendment would not cure them. Domuso therefore respectfully requests that the Court grant its Rule 12(c) motion without leave to amend and enter judgment in its favor.

Dated: October 22, 2026

**KAUFMAN DOLOWICH LLP**

By: /s/ *Katherine S. Catlos*
Katherine S. Catlos
Tiffany Schneider
Attorneys for Defendant
DOMUSO, INC.

**CERTIFICATE OF COMPLIANCE**

I certify that this brief contains 4308 words, excluding the table of contents, table of authorities, and any attachments. This brief was prepared using Microsoft Word, which reports the foregoing word count.

Dated: October 22, 2026

**KAUFMAN DOLOWICH LLP**

By: */s/ Katherine S. Catlos*

Katherine S. Catlos
Tiffany Schneider
Attorneys for Defendant
DOMUSO, INC.