**KAUFMAN DOLOWICH LLP**
Katherine S. Catlos (SBN 184227)
Tiffany Schneider (SBN 323833)
425 California Street, Suite 2100
San Francisco, California 94104
Telephone:(415) 926-7600
Facsimile: (415) 926-7601
Emai: kcatlos@kaufmandolowich.com
tiffany.schneider@kaufmandolowich.com

Attorneys for Defendant DOMUSO, INC.

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JONATHAN BEACHER,<br>Plaintiff,<br>v.<br>DOMUSO, INC.,<br>Defendant. | Case No.: 2:26-cv-09014-AH-PVC<br><br>Action Filed: August 13, 2026<br><br>**DECLARATION OF KATHERINE S. CATLOS IN SUPPORT OF DEFENDANT DOMUSO INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE, RULE 12(c)**<br><br>Date: December 2, 2026<br>Time: 1:30 p.m.<br>Place: Courtroom 9C, 9th Floor<br>Judge: Honorable Anne Hwang |

I, Katherine S. Catlos, Esq., declare as follows:

1. I am an attorney at law licensed to practice before this Court and I am a partner with Kaufman Dolowich LLP, attorneys of record for Defendant Domuso, Inc. in this action.

The facts set forth herein are known by me to be true, except for those facts specifically asserted on information and belief, which I believe to be true. If called upon to testify to the matters discussed herein, I could and would be competent to testify thereto. I submit this declaration in support of Defendant's Motion for Judgment on the Pleadings.

2. On or about September 15, 2026 I met and conferred with Plaintiff and sent a letter regarding the same. Attached as **Exhibit A** is a true and correct copy of the meet and confer letter. I certify that the parties met by videoconference, thoroughly discussed each and every issue raised in the motion, and attempted in good faith to resolve the motion in whole or in part. Plaintiff rejected the grounds for the meet and confer, and hence, this motion is being filed.

3. A true and correct copy this opinion is attached to my declaration as **Exhibit B**, *McInerney v. Regents of the Univ. of Cal.*, No. B339467 (Cal. Ct. App. Sept. 18, 2026), *certified for publication* Oct. 13, 2026.)

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed this twenty-second day of October 2026, at Oakland, California.

Katherine S. Catlos

# Exhibit A

KAUFMAN DOLOWICH

Kaufman Dolowich LLP
425 California Street, Suite 2100
San Francisco, CA 94104

Telephone: 415.926.7600
Facsimile: 415.926.7601
www.kaufmandolowich.com

**Katherine S. Catlos**
kcatlos@kaufmandolowich.com

September 15, 2026

**Via Email Only**
Jonathan Beacher
P.O. Box 98
Seattle, WA 98111
jonbeacher@gmail.com

**Re:** ***Jonathan Beacher v. Domuso, Inc.***
USDC, Central District of California Case No. 2:26-cv-09014-AH-PVC
Pre-Filing Conference of the Parties Under Local Rule 7-3 Regarding Defendant's Anticipated Motion to Dismiss Under Rule 12(c)

Dear Mr. Beacher:

This firm represents Defendant Domuso, Inc. in the above-referenced action. We write to satisfy the pre-filing conference-of-counsel requirement of Central District of California Local Rule 7-3, which requires the parties to meet and confer to discuss the substance of a contemplated motion, and any potential resolution, at least seven (7) days before the motion is filed.

Domuso intends to move to dismiss the Complaint in its entirety under Federal Rule of Civil Procedure 12(c) for failure to state a claim. The purpose of this letter is to explain the substance of that motion so that we can discuss it, and to explore whether the issues can be resolved or narrowed without the need for motion practice and the associated burden on you and the Court.

**The Substance of the Contemplated Motion**

Your Complaint pleads a single cause of action for retaliation under the whistleblower provision of the Consumer Financial Protection Act ("CFPA"), 12 U.S.C. § 5567. To state that claim, you must plausibly allege that you engaged in "protected activity," that is, that you objected to, refused to participate in, or reported a practice that you reasonably believed violated a law within the jurisdiction of the Consumer Financial Protection Bureau (the "Bureau").

Domuso's motion will be based on the following principal ground: the Complaint, by your own repeated and express allegations, identifies the practice you objected to as a quality-assurance software-testing methodology and not any act, practice, fee, disclosure, or contract

term that the Bureau regulates. Taking your allegations as true, they establish that the "activity, policy, practice, or assigned task" you objected to was the sequencing of automated regression testing, which is not conduct a reasonable person could believe violates a consumer-financial law.

**Request to Confer and to Resolve or Narrow the Issues**

Per Local Rule 7-3, we will discuss this matter per our scheduled call today.

If we are unable to reach agreement, this letter and our conference will serve as the parties' compliance with Local Rule 7-3, and Domuso will proceed to file its motion after the seven-day period.

Very truly yours,

/s/

Katherine S. Catlos of
Kaufman Dolowich LLP

KSC/ag

# Exhibit B

Filed 9/18/26; certified for publication 10/13/26 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JOHN McINERNEY,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>Defendant and Respondent. | B339467<br><br>(Los Angeles County Super. Ct. No. 23STCV16263) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Barbara Ann Meiers, Judge. Affirmed.

Mayall Hurley, Jenny D. Baysinger and Vladimir J. Kozina for Plaintiff and Appellant.

Horvitz & Levy, Karen M. Bray, Jasjaap S. Sidhu; Sanders Roberts and Reginald Roberts, Jr., for Defendant and Respondent.

John "Jack" McInerney (appellant) appeals from a judgment entered against him on his claims against the Regents of the University of California through the University of California at Los Angeles (UCLA) brought pursuant to the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.),[1] including discrimination pursuant to section 12952 (colloquially referred to as the fair chance act or FCA), retaliation pursuant to section 12940, subdivision (h), and failure to prevent retaliation pursuant to section 12940, subdivision (k). The trial court summarily adjudicated appellant's claims for retaliation and failure to prevent retaliation. As to appellant's claims under the FCA, the trial court ruled UCLA "properly and lawfully" followed the requirements of the statute in all ways but one: it failed to give appellant five business days to submit evidence of rehabilitation or mitigation regarding his criminal convictions. The question of whether this violation caused appellant harm was decided by jury trial. The jury decided against appellant.

Appellant appeals, arguing the trial court erred in summarily adjudicating appellant's retaliation and failure to prevent retaliation claims; preventing the jury from considering appellant's substantive claims under the FCA; and requiring harm beyond the mere denial of the FCA's statutory five-day response period.

For the reasons set forth below, we affirm the judgment.

---

[1] All further undesignated statutory references are to the Government Code.

## FACTUAL BACKGROUND

### I. Appellant's conviction history

In March 2005, appellant was convicted of misdemeanor possession of a controlled substance and felony possession of a controlled substance for sale. In May 2005, appellant was convicted of felony possession of a controlled substance. In June 2007, appellant was again convicted of felony possession of a controlled substance for sale. He was sentenced to two years in prison.

### II. Appellant's conditional job offer

At the age of 65, appellant gained admission to UCLA and started classes in fall 2020. Appellant lived on campus from fall 2020 through January 30, 2022.

In September 2021, appellant applied for a position as an office assistant in the Graduate Student Resource Center (GSRC). The position would "provide administrative, programmatic and clerical support to the GSRC staff," "greet and assist visitors to the GSRC," "assist with planning program events and staffing program events," and "respond[] to inquiries to department email," among other responsibilities. Andrew McClure, who at the time was interim director of the GSRC, understood the position was a "critical position" that required candidates to satisfactorily complete UCLA's background check. McClure described the position as "a forward-facing position, serving students, staff, and the community on a regular basis," representing "the reputation and integrity of the University."

Appellant interviewed with McClure on October 1, 2021, and was extended a conditional offer of employment on October 5, 2021. In his e-mail offering appellant the job, McClure wrote,

"This position requires satisfactory completion of a background check. [Human resources] will schedule you for fingerprinting."

On October 14, 2021, appellant signed a form authorizing a background check to determine whether he had a criminal record. Beginning approximately October 19, 2021, McClure provisionally placed appellant on the GSRC office assistant schedule and permitted him to begin "clocking in" part-time. Over the next six weeks, appellant worked intermittently for a total of 23.5 hours.

### III. Appellant's temporary removal and inappropriate communications with UCLA employees

On November 23, 2021, campus human resources informed McClure that because appellant's background check was not complete, he should not be placed on the schedule. On November 29, 2021, McClure spoke with appellant and told him "HR" had advised him to not put appellant on the work schedule again until his background check process cleared. Appellant immediately became angry and characterized himself as being "suspended" or "fired" by UCLA. McClure assured appellant he had received no directive to suspend or fire appellant. McClure encouraged appellant to remain calm and work through the process with human resources.

On November 30, 2021, appellant e-mailed McClure with the subject line, "I need a reason why." Appellant stated he had been "up all night thinking about what to do about getting fired for no reason and decided to go to a lawyer." Appellant said McClure had insulted him and caused him harm. He also referred to human resources as "assholes," saying, "The HR assholes better have a good reason why they harmed me."

Although appellant was fingerprinted in late November 2021, due to a backlog at UCLA Police Department after the COVID-19 pandemic, UCLA did not get the results of appellant's background check until January 4, 2022. UCLA then became aware of appellant's four convictions.

Sara Haider conducted the assessment of appellant's criminal record. She reviewed his job description as well as the conviction record. In determining that appellant's prior convictions were problematic, Haider noted "it's the fact that he had contact or would have potential contact with members of the campus community, including students, and it was a very forward-facing position." When later asked whether "the fact that the conviction was from 14-ish years prior" had any impact on her assessment, Haider noted she considered the timing of the convictions but also considered there were multiple convictions.

On January 5, 2022, Haider advised appellant that his conviction history "may" disqualify him from employment. The letter stated, "you have five (5) business days from the date of this notice to provide any supplementary documentation or information to the findings in the background check report. Your response may include submission of evidence challenging the accuracy of the conviction history report and/or evidence of rehabilitation or mitigating circumstances." Appellant was informed that campus human resources would consider any supplementary documentation and information provided and then make a final determination as to appellant's employment eligibility.

Appellant did not offer any evidence of rehabilitation or mitigation. Instead, he wrote members of UCLA human resources e-mails. Specifically, on January 6, 2022, he wrote

Debra Sriberg, stating, "No one should be allowed to stop someone from working especially without giving them a reason, this is not North Korea." Appellant demanded "the reason why you caused me harm" and asked for Sriberg's supervisor's contact information. The same day, he wrote to Haider, asking "if someone did their time why would you continue to punish them," and blaming "[t]he corrupt San Diego cop who arrested me put me in the motel room, stole my money and put the drugs on me." Appellant further berated Haider, "You were wrong to stop me from working, I am 67 years old and you caused me great harm by doing so I didn't sleep for 3 days and it still bothers me that you abused your power to harm a harmless man. How do people like you sleep at night? You probably got a promotion."

The next day, appellant wrote Haider again, stating, "Here's the problem that I have with what you did to me, no person, nowhere, know how, should tell another person they can't work for something that happened 14 years ago, that is insane, you are witch hunters and like the great Inquisition you seek to destroy lives. If you don't want to apologize I understand that because you are part of the structural violence and are haters." Appellant also wrote Sriberg on January 7, 2021, saying, "I am not the criminal here you are the criminal for causing me harm and then hiding behind Policy 21."[2] Appellant threatened legal action throughout these communications.

## IV. Appellant's disqualification from the GSRC position

On January 7, 2022, Haider forwarded appellant's e-mails and the background check to her supervisor, Anthony Solana.

---

[2] "Policy 21" is UCLA's policy for reviewing and assessing background checks, and is the policy Haider utilized when evaluating appellant's background check.

Haider noted, "I am concerned with clearing him. He was belligerent and very unprofessional in his emails to me … as well as with his supervisor and departmental HR (see attached emails where he calls HR 'assholes'). I am not sure his response makes total sense and this is a student-facing position."

Solana declined to clear appellant for the position. Solana testified the primary reason for his decision was appellant's failure to provide a substantive response to Haider's letter requesting evidence of rehabilitation or mitigation.

On January 7, 2022, Haider e-mailed appellant he was ineligible for the position of GSRC.[3]

## PROCEDURAL HISTORY

### I. Appellant's complaint

Appellant's operative second amended complaint against UCLA, filed August 10, 2023, alleged causes of action for age discrimination, unlawful discrimination in violation of the FCA, retaliation in violation of section 12940, subdivision (h), and failure to prevent retaliation.[4]

Pursuant to his second cause of action for unlawful discrimination in violation of the FCA, appellant alleged UCLA relied upon his conviction, solely or in part, to disqualify him from employment. Appellant alleged that given the nature of his prior convictions, the length of time that had passed since they occurred, and the specific job duties of the GSRC position, no reasonable employer could conclude the conviction history had a direct and adverse relationship on the job duties, justifying denial

---

[3] Haider described the position as "Office Assistant in Residential Life."

[4] Appellant later dismissed his claim for age discrimination.

of employment. Appellant also alleged UCLA interfered with his right to respond to the notice of intent to disqualify by failing to provide him at least five business days to provide additional information regarding mitigating circumstances.

As to the cause of action for retaliation, appellant alleged between November 30, 2021, and January 7, 2022, he complained about unlawful and discriminatory conduct by repeatedly protesting reliance on his 14-year-old convictions to deny him employment. Following his complaints, a number of adverse actions were taken against him. Appellant's cause of action for failure to prevent discrimination and retaliation incorporated by reference his prior allegations and asserted UCLA had failed to take all steps reasonably necessary to prevent discrimination and harassment from occurring, as required by section 12940, subdivision (k).

## II. UCLA's motion for summary judgment/adjudication

UCLA moved for summary judgment, or in the alternative, summary adjudication, of appellant's claims. UCLA explained it was not illegal for UCLA to rely on convictions more than seven years old to deny employment, and it followed the directives of the FCA. UCLA further argued appellant could not make a prima facie showing of the elements of retaliation, pointing out there was no causal nexus between appellant's alleged complaints and the adverse employment action, as Solano had testified his decision was based on appellant's conviction history and his responses to the pre-adverse action letter, which failed to provide evidence of mitigation or rehabilitation. UCLA argued appellant could not establish a cause of action for failure to prevent discrimination or retaliation given his failure to establish the underlying claims.

Appellant opposed UCLA's motion. As to the FCA cause of action, appellant argued there were triable issues of fact as to whether UCLA conducted an individualized assessment and failed to afford him the required five business days to respond. He argued his e-mails to UCLA staff constituted protected complaints under FEHA, he was subjected to an adverse employment action, and a causal link existed between the two because there was a close temporal relationship between his complaints and UCLA's decision not to hire him. He further argued UCLA had not established a legitimate, nonretaliatory reason for not hiring him, so he was not required to present evidence of pretext.

In its reply brief, UCLA argued appellant had not established a violation of the FCA. It argued uncontested evidence was presented that it had carried out an individualized assessment and permitted appellant five days to provide evidence of mitigation or rehabilitation, as required. UCLA further argued appellant's threatening, profane e-mails were not protected under FEHA: "[Appellant] claims that his 'protests' against UC's background check process constituted protected activity yet fails to provide any legal authority suggesting that objecting to the *process*, and bullying personnel with slurs and obscene language, is a protected activity. Behavior that is clearly inappropriate in the workplace is not 'protected' in the pre-employment period." UCLA argued, "[appellant] did not establish that he engaged in protected activity, and UC is entitled to summary judgment on that basis alone." UCLA further explained temporal proximity was insufficient to create an inference of causation, particularly given the legitimate reasons UCLA articulated for declining to hire appellant.

## III. Trial court decision

The trial court granted summary adjudication in favor of UCLA on appellant's third cause of action for retaliation and fourth cause of action for failure to prevent retaliation. The court found appellant had failed to plead or demonstrate a prima facie case of retaliation. The court noted appellant had not come forward with "a complaint about violations of the law." Instead, this was a situation where the employer, UCLA, invited the employee to come forward with any reason he believed UCLA should not go forward with the refusal to hire. The court found appellant could not show a nexus under the circumstances. The court also found there was no evidence whatsoever of discrimination.

As to appellant's claims under the FCA, the court found "the process required under the governing statute and regulations in order to conduct and complete an 'individual assessment' was properly and lawfully followed by [UCLA] in this case in every respect" except for its "failure to provide the required full five days of response time" to UCLA's pre-adverse action letter. However, the court found appellant was required to show "the error made in not giving a full five days resulted in his not getting the job in question." The matter proceeded to jury trial on the questions of whether appellant was prepared to come forward with additional response information, just what that information was, and that such information would have been proffered "but for" the closure of his opportunity to respond. UCLA would then be required to prove the result would not have been different even had appellant been given the additional time to respond.

## IV. Jury verdict

At trial, appellant argued in his closing statement that UCLA's refusal to hire him was based solely on his criminal convictions, and the concerns about the hostile e-mails and his failure to provide evidence of rehabilitation were excuses UCLA came up with after the fact. UCLA argued the decision not to hire appellant was primarily based on the hostile and unprofessional e-mails sent by appellant.

The jury returned a special verdict, finding UCLA's decision not to hire appellant was not based solely on appellant's criminal history and that his criminal history was not a substantial factor in UCLA's decision. The jury further found that, although UCLA failed to prove appellant would not have submitted evidence of rehabilitation if given the full five days required under the FCA, UCLA still would have reached the same decision not to hire him regardless if appellant had provided evidence of rehabilitation.

The trial court entered judgment for UCLA. Appellant appealed from the judgment.

# DISCUSSION

## I. Summary adjudication of appellant's causes of action for retaliation and failure to prevent retaliation

Appellant contends the trial court's decision to grant summary adjudication of appellant's claims of retaliation and failure to prevent retaliation was error as triable issues of fact existed.

### A. *Applicable law and standard of review*

When reviewing an appeal from a grant of summary adjudication, we make "'an independent assessment of the

correctness of the trial court's ruling, applying the same legal standard as the trial court.'" (*Trop v. Sony Pictures Entertainment, Inc.* (2005) 129 Cal.App.4th 1133, 1143.)

The party moving for summary adjudication bears the initial burden of proving there are no triable issues of fact and it is entitled to judgment as a matter of law. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).) If the moving party meets that initial burden, the burden shifts to the party opposing summary judgment to establish that a triable issue of material fact remains to be determined. (*Id.* at pp. 850–851.) The burden of establishing a triable issue of fact must be met by means of competent, admissible evidence. (*Brown v. Ransweiler* (2009) 171 Cal.App.4th 516, 525.) It is not created by speculation, conjecture, conclusory assertions or possibilities. (*Sinai Memorial Chapel v. Dudler* (1991) 231 Cal.App.3d 190, 196.)

We may affirm a decision granting summary adjudication on any legal theory, regardless of whether that theory was adopted by the trial court. We are not bound by the trial court's rationale. (*Wills v. Superior Court* (2011) 195 Cal.App.4th 143, 161 (*Wills*).)

**B. *Retaliation***

**1.** *Retaliation under FEHA*

To make a retaliation claim under FEHA, a plaintiff must show that (1) he engaged in activity protected by FEHA; (2) he was subjected to an adverse employment action; and (3) a causal link exists between the activity and the adverse action. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042 (*Yanowitz*).)

On summary judgment, the employer bears the initial burden to either (1) negate an element of the employee's prima facie case or (2) articulate a legitimate, nondiscriminatory and nonretaliatory reason for the adverse employment action. (*Wills, supra*, 195 Cal.App.4th at p. 160.)

Once the employer does either of the above, the employee seeking to avoid summary judgment must present evidence that the employer's evidence was insufficient or '"a discriminatory reason more likely motivated the employer or that the employer's explanation is unworthy of credence."' (*King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 433.)

**2.** *UCLA met its burden of showing appellant could not show protected activity to establish a prima facie case of retaliation*

Appellant's first step in setting forth a prima facie case for retaliation was showing he engaged in protected activity. Appellant failed to meet this burden.[5]

[5] Appellant objects to both the trial court and this court deciding appellant's retaliation claim based on his failure to establish the first element—opposition to unlawful activity. Appellant claims although the trial court found appellant did not engage in opposition to unlawful conduct, this issue was not briefed in UCLA's summary judgment motion. However, UCLA did argue that appellant failed to engage in protected activity, stating in its reply brief, "[appellant] did not establish that he engaged in protected activity, and UC is entitled to summary judgment on that basis alone." We further note that within the trial court's order, the court invited appellant to file a motion for reconsideration to correct any errors. While the statement was made in the context of summary judgment on appellant's discrimination claim, there is no evidence appellant filed any objection to the basis of the trial court's order on retaliation.

"'For protection under the "opposition clause," an employee must have opposed an employment practice made unlawful by the statute.'" (*Dinslage v. City and County of San Francisco* (2016) 5 Cal.App.5th 368, 381 (*Dinslage*).) An employee's conduct may constitute protected activity "'when the employee opposes conduct that the employee reasonably and in good faith believes to be discriminatory, whether or not the challenged conduct is ultimately found to violate the FEHA.'" (*Ibid.*) A mistake of either fact or law may establish an employee's good faith belief that he or she was opposing conduct prohibited by FEHA. (*Dinslage*, at p. 381.) In such cases, "the question is the reasonableness of the employee's belief that he was opposing a practice prohibited by the FEHA." (*Ibid.*)

Appellant alleged he engaged in protected activity when "he voiced his contention that relying on his 14-year-old conviction was improper and sought assistance from legal counsel and the DFEH." Nothing in the FEHA prohibits an employer from relying on a 14-year-old conviction in determining an employee is ineligible for a position. In fact, the FCA permits a criminal background check, as long as it is conducted according to the process set forth in section 12952, subdivision (a). (§ 12952, subd. (b) ["This section shall not be construed to prevent an

---

Under the circumstances, we find appellant has forfeited any claim that the first element of retaliation was not at issue below. Regardless, as set forth above, we may affirm the trial court's decision on any legal theory. (*Wills, supra*, 195 Cal.App.4th at p. 161.)

employer from conducting a conviction history background check not in conflict with the provisions of subdivision (a).”].)[6]

Nor do appellant’s communications with UCLA demonstrate an objectively reasonable belief that UCLA was engaging in unlawful activity. Appellant’s first communication was an e-mail to McClure following McClure’s act of informing appellant he could not be put on the work schedule until his background check was complete. Appellant’s e-mail to McClure was captioned, “I need a reason why.” In it, he expressed his belief he was being fired “for no reason.” Appellant stated there was “absolutely no cause [for you] to have done this,” “this abuse has to stop,” and “the HR assholes better have a good reason why they harmed me.” Appellant’s e-mail does not mention the background check, nor does it suggest UCLA was engaging in any conduct that violated the FCA. Even if appellant’s e-mail had mentioned the background check, no reasonable person could believe UCLA was violating the law by conducting a background check on a provisional employee.

In his first communication to Sriberg on January 6, 2022, appellant again protested his suspension from work, stating he was “never told … the reason why.” Appellant reiterated, “No one should be allowed to stop someone from working especially without giving them a reason, this is not North Korea.” Appellant sought the reason he had been suspended and said, “I want to see the rules that say that you can suspend someone from working without telling them why and then I will seek legal advice.” Again, nothing in this communication constituted

---

[6] We discuss the procedural requirements of the FCA in further detail in part II, *post*.

opposition to an unlawful employment practice. Nothing in FEHA forbids an employer from deciding not to hire an employee without expressing a reason. Appellant did not mention his criminal history nor object to the background check. Even if he had, UCLA's decision to not put appellant on the work schedule until his background check had been completed was legal.

After Sriberg informed appellant of the background check, appellant responded with an e-mail stating he did "not agree that if someone did their time why would you continue to punish them" and that "the corrupt San Diego cop who arrested me put me in the motel room, stole my money and put the drugs on me." Appellant continued, "You were wrong to stop me from working, I am 67 years old and you caused me great harm by doing so I didn't sleep for 3 days and it still bothers me that you abused your power to harm a harmless man. How do people like you sleep at night? You probably got a promotion." Appellant's e-mail expresses disagreement in general with using an individual's conviction history to prevent him from working. However, disqualifying an individual from employment based on his conviction history is not illegal, nor could a reasonable individual believe it to be so. The FCA expressly permits a background check after a conditional offer of employment. Appellant's communication made no reference to UCLA's background check process, nor did it suggest UCLA's procedure violated the FCA.

Thereafter appellant requested a copy of UCLA's "Policy 21" from Sriberg, stating, "[a]ll I wanted was an apology for all the depression, stress and anxiety you gave me and continue to give me. I am not the criminal here you are the criminal for causing me harm and then hiding behind Policy 21." Again,

appellant's communication makes no objection to a purportedly discriminatory act. Appellant makes no claim that UCLA's Policy 21 is discriminatory, otherwise illegal or fails to comply with the FCA.

Later the same day, appellant continued e-mailing Sriberg with an angry tone, stating, "Here's the problem that I have with what you did to me, no person, nowhere, know how, should tell another person they can't work for something that happened 14 years ago, that is insane, you are witch hunters and like the great Inquisition you seek to destroy lives. If you don't want to apologize I understand that because you are part of the structural violence and are haters. So it is up to me now to change the policy and that's all I want to do, stop this from happening to anyone else again." As set forth above, it is not illegal to use an individual's conviction history to deny him employment, regardless of how many years earlier the conviction occurred. Appellant does not claim UCLA's policy regarding background checks was illegal. His desire to change UCLA's policy does not suggest a reasonable belief that UCLA's policy was illegal—on the contrary, it suggests appellant wanted to change existing law.

Appellant's subjective perception that UCLA's action was discriminatory will not prevail on a claim under FEHA; his claim may only succeed if "'a reasonable person …, considering all the circumstances, would … share the same perception.'" (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1044.) Appellant has failed to meet this standard. Thus, appellant's claim fails on the first element, as he has not produced evidence that he engaged in an activity protected by FEHA.

We note that decisions implementing former title VII of the Civil Rights Act of 1964 (Title VII) (42 U.S.C.S. § 2000e et seq.) suggest appellant fails to meet the first element of his retaliation claim for a second, independent reason.[7] "Certain conduct for example, illegal acts of opposition or unreasonably hostile or aggressive conduct may provide a legitimate, independent, and nondiscriminatory basis for an employee's discharge." (*Payne v. McLemore's Wholesale & Retail Stores* (5th Cir. 1981) 654 F.2d 1130, 1142; see also *Hochstadt v. Worcester Foundation for Experimental Biology* (1st Cir. 1976) 545 F.2d 222, 230 [employee's discharge justified where her oppositional behavior "went beyond the pale of reasonable opposition activity"].)

Appellant's hostile communications with UCLA staff went beyond reasonable opposition activity. Appellant engaged in inappropriate correspondence with UCLA staff during his purported oppositional activity, berating and demeaning his potential future colleagues.[8] These communications were not

---

[7] When interpreting FEHA, California courts frequently look to federal case law interpreting Title VII. (See *Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 463.)

[8] Appellant argues the question of whether appellant's e-mails went "too far" is a fact question for the jury. However, the elements of a FEHA claim may be decided as a matter of law where no objective, reasonable person could disagree. (See, e.g., *Hughes v. Pair, supra*, 46 Cal.4th at pp. 1048–1049 [defendant's sexually harassing conduct was not pervasive or severe as a matter of law]; *Holmes v. Petrovich Development Co., LLC* (2011) 191 Cal.App.4th 1047, 1060 [no reasonable jury could objectively find hostile work environment for a reasonable pregnant woman].) Such is the case here.

protected under FEHA, and constituted legitimate, nondiscriminatory reasons for UCLA's failure to hire appellant.

**3.** *Appellant's arguments regarding the first element of retaliation are unpersuasive*

Appellant argues a reasonable factfinder could conclude appellant's communications conveyed appellant's opposition to conduct he reasonably believed constituted unlawful use or consideration of his criminal history. Appellant asserts the reasonableness of his belief is a quintessential fact question that is generally not subject to summary adjudication. In support of this argument, appellant cites *Terry v. Atlantic Richfield Co.* (1977) 72 Cal.App.3d 962, 966 (*Terry*). In *Terry*, while discussing fair and reasonable allocation under certain contracts, the court noted, "Except where there is no room for a reasonable difference of opinion, the reasonableness of an act or omission is a question of fact, that is, an issue which should be decided by a jury and not on a summary judgment motion." (*Ibid.*) Appellant contends a jury could conclude appellant's belief he was being treated unlawfully was reasonable.

As the *Terry* court noted, an employee's reasonable and good faith belief as to whether an act is discriminatory may be decided as a matter of law when there is no room for a reasonable difference of opinion. (See, e.g., *Dinslage, supra*, 5 Cal.App.5th at pp. 382–384.) In *Dinslage*, the court explained, "To meet his burden on this issue, '[a] plaintiff must not only show that he *subjectively* (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was *objectively* reasonable in light of the facts and record presented.'" (*Id.* at pp. 381–382.) "The objective reasonableness of an employee's belief that his employer has engaged in a

prohibited employment practice 'must be measured against existing substantive law.'" (*Id.* at p. 382.) As to the employee in *Dinslage*, the court concluded, "none of these [allegedly protected] activities are protected for the purposes of the FEHA's antiretaliation provision, because none of them express opposition to practices one could reasonably believe are unlawful under the FEHA." (*Ibid.*)

Similarly, appellant did not express opposition to practices one could reasonably believe are unlawful under FEHA. FEHA does not prohibit criminal background checks—in fact, FEHA expressly permits them, as long as they are done in conformance with the procedure set forth in the statute. (§ 12952, subd. (b).) Nor does FEHA prevent an entity from determining that an applicant's conviction history disqualifies him from a position. At no time did appellant complain that UCLA failed to comply with the process set forth in the FCA. In short, his actions were not protected.[9]

---

[9] Appellant also argues the statements in his e-mails to UCLA that he was pursuing legal action were protected under FEHA. However, there is no evidence UCLA considered appellant's threats of legal action when making the decision to not hire him. On the contrary, UCLA's communications showed they supported appellant's decision to consult with outside sources. For example, when appellant e-mailed Haider stating he had "talked with legal aid already," Haider responded appellant was "free to seek outside resources as needed." In her deposition Sriberg also testified she did not consider it unprofessional for appellant to consider legal action. There is no evidentiary basis for appellant's suggestion that UCLA's failure to hire him resulted from his threats of legal action.

Appellant also argues the fact that his e-mails were perceived as aggressive in tone and arguably used disparaging language does not alter their protected status. Appellant cites *Caterpillar Tractor Co. v. National Labor Relations Bd.* (9th Cir. 1981) 638 F.2d 140, 141–142, where a chief union steward was authorized under a collective bargaining agreement to write up employee grievances. When the steward set out to write an employee's grievance, a supervisor prevented him from using the indoor area normally used and forced them to do the work outside. Other evidence the supervisor was trying to interfere with the grievance process existed. This provided substantial evidence the employer had violated the National Labor Relations Act (29 U.S.C.S. § 151 et seq.). The court noted, "In light of the above, the fact that [the union steward] reacted to [the supervisor's] action with an outburst of profanity does not provide good cause for his suspension. Although such conduct cannot be condoned, the Board reasonably found here it was a response to [the supervisor's] interference with protected activity." (*Caterpillar*, at pp. 141–142.)

Appellant cites a second case involving the National Labor Relations Board (NLRB), *King Soopers, Inc. v. National Labor Relations Bd.* (D.C. Cir. 2017) 859 F.3d 23, 35–36 (*King Soopers*).) In *King Soopers*, an employee complained about violations of her collective bargaining agreement. In a meeting with a supervisor to discuss her complaints, both parties became agitated. (*Id.* at p. 28.) The employee was then terminated in connection with her "'gross misconduct'" during the meeting. (*Ibid.*) The board found the employee's conduct during the meeting did not cause her to lose protection from the National Labor Relations Act. (*King Soopers*, at p. 28.) In affirming the board's decision, the D.C.

Circuit cited an NLRB opinion holding that "[w]hile employees may be punished for insubordination, they cannot be lawfully punished for misconduct that is intertwined with protected activity unless that behavior is so 'opprobrious' as to 'lose the protection of the Act.'" (*Id.* at p. 35.)

These cases in the NLRB context do not convince us that appellant's actions were protected in this case. The cases cited above involving Title VII are more persuasive. (See *Payne v. McLemore's Wholesale & Retail Stores, supra*, 654 F.2d at p. 1142; *Hochstadt v. Worcester Foundation for Experimental Biology, supra*, 545 F.2d at p. 230.) Those cases agree unreasonably hostile or aggressive conduct, such as that exhibited by appellant, falls outside of the protection of FEHA.

**4.** *Lack of causal connection*

Although appellant's retaliation claim fails on the first element, we note this claim also fails on the third element, causation. To prove retaliation, appellant must show not only a protected act and an adverse employment action, but also a causal link between the protected activity and the adverse action. (*Yanowitz, supra*, 36 Cal.4th at p. 1042.) To show such a causal link, appellant had to show that retaliatory animus was "a substantial or motivating factor in the adverse employment decision." (*George v. California Unemployment Ins. Appeals Bd.* (2009) 179 Cal.App.4th 1475, 1492.) Thus, even if appellant had engaged in protected activity by protesting the reliance on his conviction history to deny him employment, he was also required to show a causal connection between the purported protected activity and UCLA's decision to not hire him.

UCLA submitted evidence explaining the decision to not hire appellant for the position was based on his failure to provide

a substantive response to the pre-adverse action letter as well as his unprofessional conduct following his suspension from work. When asked the reason she decided to disqualify appellant from the position, Haider responded, "First of all, he didn't provide any response to the pre-adverse, so he really didn't provide anything for me to review." Haider also stated, "his conduct during the pre-adverse review process was alarming and, you know, part of what I … considered." Solana, when asked what factored into his decision, responded he had reviewed the e-mail chain Haider forwarded him and noted appellant's lack of a substantive response to the request for mitigating information. In the absence of evidence to the contrary, appellant fails to create a triable issue of material fact as to the reason for his disqualification.[10]

In response to this evidence, appellant argues the prima facie causation element may be satisfied solely through demonstration of a relatively close temporal connection between the protected activity and the adverse action. (Citing *Flait v. North American Watch Corp.* (1992) 3 Cal.App.4th 467, 478.) Appellant argues each of the adverse employment actions took place close to the time he expressed concerns about UCLA using his conviction history against him.

Appellant is correct that in some cases, timing alone may be sufficient to draw a causal link between protected activity and

---

[10] In his testimony appellant claims UCLA employees admitted appellant's oppositional e-mails influenced the ultimate disqualification decision. However, it was not appellant's complaints themselves, nor the threat of legal action, that contributed to UCLA's decision. Instead, as Haider stated, it was his "alarming" tone and unprofessionalism.

adverse employment action. (*Wawrzenski v. United Airlines, Inc.* (2024) 106 Cal.App.5th 663, 702.) However, temporal proximity alone may be considered insufficient to raise a triable issue of fact as to causation where the employer has raised a legitimate, nonretaliatory reason for the adverse employment action. (*Arteaga v. Brink's, Inc.* (2008) 163 Cal.App.4th 327, 354.) "'Standing alone against [UCLA's] strongly supported legitimate reason for terminating [appellant], temporal proximity does not amount to more than a scintilla of evidence of [retaliation].'" (*Id.* at p. 353.) Here, UCLA provided uncontested evidence that appellant's disqualification was based on his unprofessional e-mails and his failure to provide evidence of mitigation or rehabilitation.

Thus, even if appellant had carried out a protected act under FEHA—which he did not—his claims would fail due to UCLA's strongly supported legitimate reason for his disqualification.[11]

---

[11] Appellant asserts it is improper to discuss the issue of whether UCLA articulated a legitimate, nonretaliatory reason for the adverse action because in their summary judgment motion UCLA challenged only appellant's prima facie case and did not seek summary adjudication on the ground that UCLA was able to articulate a legitimate, nonretaliatory reason for appellant's disqualification. However, UCLA did argue there was no causal nexus between appellant's alleged complaints and the adverse employment action, as Solano had testified his decision was based on appellant's conviction history and his responses to the pre-adverse action letter, which failed to provide evidence of mitigation or rehabilitation. In its reply brief, UCLA further explained temporal proximity was insufficient to create an inference of causation, particularly given the legitimate reasons UCLA articulated for declining to hire appellant. Under the

### C. *Failure to prevent retaliation*

Because appellant failed to set forth a viable claim for retaliation, his claim for failure to prevent retaliation must also fail. (*Miller v. Department of Corrections & Rehabilitation* (2024) 105 Cal.App.5th 261, 284–285 [employers cannot be held liable for failing to take action to prevent discrimination if there is no actionable discrimination in the first place].) The trial court properly granted summary adjudication on appellant's failure to prevent retaliation cause of action.

## II. Violation of the FCA

Appellant makes two arguments of error concerning the trial court's handling of his claim for violation of the FCA. First, he claims it was error for the trial court to preclude the jury from considering his claim that UCLA failed to properly conduct the required individualized assessment. Next, he claims the trial court erred in requiring harm beyond the denial of the full five-day response period.

We discuss each claim separately below and find no reversible error.

### A. *The FCA*

The Legislature enacted the FCA in 2017. (Stats. 2017, ch. 789, § 2.) The Legislature was concerned with the stigma associated with the disclosure of criminal records, which "can automatically disqualify applicants from the job without notice from the employer or explanation from the applicant." (Sen. Com. on Labor and Industrial Relations, Analysis of Assem. Bill No. 1008 (2017–2018 Reg. Sess.) June 20, 2017, p. 4.) The statute was designed to "give applicants with a criminal record the

---

circumstances, we reject appellant's position that UCLA should not be permitted to address this issue on appeal.

opportunity to be judged on their qualifications." (*Ibid.*) The law incorporates "certain procedural safeguards in the hiring process intended to focus the employer on the true merits of the candidate for the job, rather than on any criminal history the candidate may possess." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1008 (2017–2018 Reg. Sess.) June 20, 2017, p. 2.) Those procedural safeguards are as follows.

First, the employer cannot ask about an applicant's conviction history, or consider an applicant's conviction history, until after the employer has made a conditional offer of employment to the applicant. (§ 12952, subd. (a)(1) & (2).) However, the statute makes clear it is not to be construed to prevent an employer from conducting a conviction history background check, as long as the employer's actions do not conflict with subdivision (a). (§ 12952, subd. (b).)

If an employer conducting a background check identifies a conviction, the employer must then "make an individualized assessment of whether the applicant's conviction history has a direct and adverse relationship with the specific duties of the job that justify denying the applicant the position." (§ 12952, subd. (c)(1)(A).) In making that assessment, the employer must consider (1) the "nature and gravity of the offense or conduct," (2) the "time that has passed since the offense or conduct and completion of the sentence," and (3) the "nature of the job" sought. (§ 12952, subd. (c)(1)(A).) However, the employer "is not required to … commit the results of this individualized assessment to writing." (§ 12952, subd. (c)(1)(B).)

If, because of the individualized assessment, the employer is considering disqualifying the applicant based on his criminal record, the employer must notify the applicant. (§ 12952, subd.

(c)(2).) But the employer need not "justify or explain" its reasoning. (§ 12952, subd. (c)(2).) The notification must include notice of the disqualifying conviction or convictions that are the basis of the preliminary decision to rescind the offer. (§ 12952, subd. (c)(2)(A).) The notice must also explain the applicant's right to respond to the notice of the employer's preliminary decision before that decision becomes final and the deadline by which to respond. The explanation must inform the applicant that the applicant's response may include "submission of evidence challenging the accuracy of the conviction history report that is the basis for rescinding the offer, evidence of rehabilitation or mitigating circumstances, or both." (§ 12952, subd. (c)(2)(C).) The applicant "shall have at least five business days to respond to the notice provided to the applicant … before the employer may make a final decision." (§ 12952, subd. (c)(3).)

Before making a final decision, the employer "shall consider information submitted by the applicant" responding to the employer's notice. (§ 12952, subd. (c)(4).) If the employer makes a final decision to deny an application solely or in part because of the applicant's conviction history, the employer must notify the applicant in writing of the final decision. The employer is not required to justify or explain the final denial or disqualification. (§ 12952, subd. (c)(5)(A).)

### B. ***Failure to properly conduct individualized assessment***

The trial court concluded there was no triable issue of material fact as to whether UCLA followed the procedure set forth in section 12952, subdivision (c)(1)(A), which requires an employer to make an "individualized assessment" of whether the applicant's conviction history has a direct and adverse

relationship with the specific duties of the job that justify denying the applicant the position. Appellant disagrees, arguing evidence in the record supports a reasonable inference that UCLA did not conduct the required individualized assessment.

**1.** *Standard of review*

The trial court summarily adjudicated appellant's claim that UCLA failed to conduct an adequate individualized assessment under the FCA. In reviewing the trial court's summary adjudication of this claim, we undertake a de novo review. (*Panagotacos v. Bank of America* (1998) 60 Cal.App.4th 851, 855.) Summary adjudication is appropriate when there are no triable issues of fact and the moving party is entitled to judgment as a matter of law. (*Aguilar, supra*, 25 Cal.4th at p. 850.) The party opposing summary adjudication must provide substantial evidence to create a conflict of evidence. While we must give appellant's evidence all the value to which it is legally entitled, "[a] mere 'scintilla of evidence' does not create a conflict for the jury's resolution." (*Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 291.) "There is a genuine issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion …." (*Aguilar, supra*, at p. 845.)[12]

---

[12] Appellant claims the trial court's summary disposition of his claim concerning the individualized assessment under the FCA was akin to a demurrer or nonsuit. (Citing *Wang v. Peletta* (2025) 112 Cal.App.5th 478, 486.) Either way the standard of review is the same: we must view the record in the light most favorable to appellant and indulge every legitimate inference in favor of appellant, affirming only if there is no substantial evidence in the record to support a judgment in appellant's favor.

**2.** *UCLA's evidence that the individualized assessment was properly conducted*

In support of its motion for summary adjudication on this issue, UCLA provided deposition testimony and documentary evidence. Haider testified in performing an individualized assessment, she followed the university policy outlined UCLA's Policy 21. That policy identifies the same three factors the FCA requires an employer to consider: the nature and gravity of the offenses; the length of time that has passed since the offenses; and the nature of the job. Solana, the director of Haider's department, identified the same process.

Haider also provided detailed testimony describing her performance of the individualized assessment regarding appellant. She testified she first reviewed the job description as well as appellant's criminal history. Haider noted appellant was no longer on probation or parole relating to his prior convictions. In reviewing the job description, Haider noted that if hired, appellant "would have … contact with members of the campus community, including students, and it was a very forward-facing position." Haider understood that appellant's convictions involved controlled substances and felt the interaction with students could be potentially problematic if there was a risk of appellant's involvement with controlled substances. While Haider considered the convictions were from approximately 14 years prior, that did not alleviate her concerns about the multiple convictions on his record.

---

(*Edwards v. Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15, 28.)

Solana also elaborated on the criteria UCLA considered when reviewing background checks, noting "student-facing" positions are designated as "critical," and UCLA does everything it can to prevent students from being exposed to drugs. Solana also undertook an individualized assessment of appellant's criminal background, concluding appellant was not qualified because it was "a student-facing role" and "there were convictions regarding substance abuse and sales." Solana emphasized the conviction history alone was not the primary reason for appellant's disqualification—it was appellant's failure to substantively respond with information suggesting appellant had rehabilitated and reformed his life.

UCLA also provided e-mails that corroborated Haider's testimony she performed the individualized assessment. On January 6, 2022, Haider sent appellant an e-mail that described the process. She wrote: "UCLA's background check process includes review of all conviction history of a candidate. If the background check contains a criminal conviction or other potentially disqualifying information, an individualized assessment is conducted looking at several factors and the candidate is afforded an opportunity to respond. A criminal conviction will not automatically disqualify a candidate from employment." Haider described this as the "standard process."

Haider's e-mail to Solana, forwarding appellant's background check and e-mail correspondence, expressed Haider's concern that the job was a "student-facing position," suggesting she had already performed the individualized assessment.

**3.** *Appellant's arguments that a triable issue of fact exists*

Appellant argues the evidence supports a reasonable inference that Haider did not conduct a proper individualized assessment before making the preliminary decision that appellant's conviction history disqualified him from the job. In particular, appellant argues, the evidence supports a reasonable inference that Haider did not review the specific nature of the job or speak with appellant's direct supervisor before issuing the pre-adverse letter on January 5, 2022. As support for this argument, appellant points to an e-mail Haider sent to Sriberg on January 6, 2022, stating, "Hi Deb—Can you send me the JD for [appellant's] position?" On January 7, 2022, at approximately 11:06 a.m., McClure forwarded to Haider the job description. Subsequent e-mails between Haider and Sriberg, all taking place before noon on January 7, 2022, involved Haider asking Sriberg if it was a "CX" position and Sriberg responding the position was designated "Student 1."[13] The letter informing appellant he was deemed unqualified for the job was sent to appellant by e-mail on January 7, 2022, at 12:38 p.m.

This evidence does not conflict with Haider's testimony that she performed the required individualized assessment. Appellant points to no requirements that the person conducting the individualized assessment must examine a formal written job description nor that such person must speak with the prospective employee's supervisor. Appellant does not contest the key component of the job that was most problematic, given his

---

[13] These questions had to do with whether or not the job was unionized.

conviction history—the fact that it was a position that involved interaction with students. Appellant points to no evidence that Haider was unaware of the general job description and that the job involved student interaction. The e-mails above do not create a triable issue of material fact as to whether Haider adequately performed the individualized assessment.

Appellant next points to a form used by UCLA when conducting a background check. Appellant points out the form, dated January 5, 2022, was incomplete. Appellant also argues the form initiated for appellant erroneously described the GSRC position as being in the "Residential Life" department. Appellant claims this is a miscategorization of the job. Thus, according to appellant, the individual who allegedly conducted the individualized assessment was not even aware of the department appellant was applying for—leading to a reasonable inference that actual consideration of the nature of the job "simply did not happen."

Again, the form does not provide evidence that the individualized assessment was not carried out. The form is a memorandum, from Haider to Solana. It lists "applicant/employee" information, and "background check results." (Capitalization omitted.) Subsequent sections of the memorandum, including those labeled "applicant/employee communication," "employee relations consultant proposal," "director, employee, & labor relations review," and "signatures," are blank. (Capitalization omitted.) Haider testified the form is generated every time a pre-adverse letter is sent out. There is no evidence Haider or anyone else relied on the information in this form when making the individualized assessment. The form is incomplete, and there is no requirement the individualized

assessment be memorialized in writing or formalized in a memorandum. Again, appellant does not dispute the GSRC job involved student contact, which was the main attribute of the job that caused Haider concern. Thus, the incomplete form does not undermine Haider's testimony and the other evidence that the individualized assessment was properly carried out.

Appellant further argues the form suggests no individualized assessment was carried out because the form shows appellant's conviction history implicated a specific category of crimes identified by UCLA as justifying a decision not to hire.[14] This is complete speculation and is undermined by the evidence, including testimony of both Haider and Solana that they had cleared individuals with criminal backgrounds in the past. Haider testified she had both "cleared [them] without a pre-adverse, or we've provided the pre-adverse and given them a chance to respond and then cleared them." Solana testified the convictions did not automatically disqualify appellant from the

---

[14] The form allows the person completing it to check a box indicating the type of crime in the candidate's background in the event of a decision not to hire the candidate. The individual may either check "Yes—proceed to hire applicant" or "No—do not proceed to hire applicant (check reason below)." The categories listed are "Violent crime," "Sexual crime," "Crime involving child[ren]," "Drug-related crime," "Theft," and "Driving Essential Function." This section of the form generated during appellant's individualized assessment is blank. Nothing in the form suggests an applicant must be disqualified for the listed categories.

job, explaining, "It's not that the convictions themselves barred him from the position. It was just the lack of a response."[15]

Appellant's speculation that the categories listed on the form constituted blanket classifications of crimes justifying a decision not to hire does not create a triable issue of fact as to UCLA's completion of the individualized assessment process in this matter.

Appellant has not set forth evidence creating a triable issue of fact as to whether UCLA performed a proper individualized assessment. A triable issue of fact "is not created by 'speculation, conjecture, imagination or guess work.'" (*Sinai Memorial Chapel v. Dudler, supra*, 231 Cal.App.3d 190, 196.) Nor is it raised by conclusory assertions or mere possibilities. (*Ibid.*) The evidence in the record referenced by appellant is insufficiently substantial to allow a reasonable trier of fact to find the underlying fact his favor. (*Aguilar, supra*, 25 Cal.4th at p. 845.) We therefore affirm the trial court's summary adjudication of the individualized assessment issue in UCLA's favor.[16]

---

15 Solana was also asked, "So [appellant] could presumably apply to other positions and be considered despite what was in his background check, right?" Solana responded, "Absolutely."

16 We also note the jury made a factual determination that appellant's criminal history was not a substantial factor in UCLA's decision to disqualify appellant from the GSRC position. Thus, even if UCLA failed to properly conduct the individualized assessment—as it failed to allow the full five-day response period—any such failure would require an analysis of whether it caused harm to appellant. (See part II.D., below.) Given the jury's finding that appellant's criminal history was not a substantial factor in UCLA's decision, UCLA's purported

### C. *Results of UCLA's individualized assessment*

Appellant also takes issue with the outcome of UCLA's individualized assessment, arguing "there simply is no 'direct and adverse' relationship between [appellant's] previous drug-related convictions from more than fourteen years prior and the specific job duties of a GSRC Office Assistant."

The trial court determined it was not a court's place to evaluate the outcome of UCLA's assessment, stating "all that the employer is required to do is to conduct its assessment in the manner called for by Code. Once it has done that, the employer's judgment is not to be reevaluated or second-guessed by the applicant or a Court in terms of whether it was a good or fair decision or not." Appellant disagrees, arguing in the absence of a sufficient nexus, a preliminary disqualification determination is unjustified and thus unlawful under the FCA.

In support of his argument, appellant cites two provisions of the FCA. First, section 12952, subdivision (a)(4), makes it unlawful to "interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right provided under this section." In addition, section 12952, subdivision (c)(5) provides, "If an employer makes a final decision to deny an application solely or in part because of the applicant's conviction history, the employer shall notify the applicant in writing of all the following: [¶] (A) The final denial or disqualification. The employer may, but is not required to, justify or explain the employer's reasoning for making the final denial or disqualification. [¶] (B) Any existing procedure the employer has for the applicant to challenge the

---

improper individualized assessment could not have led to any harm to appellant.

decision or request reconsideration. [¶] (C) The right to file a complaint with the [civil rights] department."

We review the statute de novo. (*Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 916.) We conclude the cited provisions, and the statute as a whole, do not permit a court or jury to second-guess an employer's individualized assessment. Instead, the statute requires certain procedures that must be followed before denying employment to an individual based on his conviction record. The statute makes it unlawful for an employer to fail to follow those procedures and permits an individual who is denied employment because of his conviction history to file a complaint if he believes the employer has interfered with any right provided under the section. It does not require an employer to hire an individual with a criminal background in the event there is no direct and adverse relationship between the job and the conviction. Instead, it imposes a procedural requirement that the employer make an individualized assessment of *whether* such a direct and adverse relationship exists. (§ 12952, subd. (c)(1)(A).)[17]

---

[17] As UCLA points out, other states have passed laws that expressly prohibit denying employment unless there is a relationship between the job and the conviction. For example, in New York, "[n]o application for any license or employment … shall be denied or acted upon adversely by reason of the individual's having been previously convicted of one or more criminal offenses … unless: [¶] (1) there is a direct relationship between one or more of the previous criminal offenses and the specific license or employment sought …." (N.Y. Correc. Law, § 752.) Similarly, in Minnesota, "no person shall be disqualified from public employment … solely or in part because of a prior conviction …, unless the crime or crimes for which convicted directly relate to the position of employment sought …." (Minn.

The specific language in the statute absolving the employer from the responsibility of making any written record of the individualized assessment also suggests no review of that assessment will take place. Section 12952, subdivision (c)(1)(B) lays out the factors to be considered in performing the individualized assessment, but provides "[a]n employer may, but is not required to, commit the results of this individualized assessment to writing." Again, when communicating with the individual who has been denied employment, the statute provides that the employer "may, but is not required to, justify or explain the employer's reasoning for making the final denial or disqualification." (§ 12952, subd. (c)(5)(A).) This permissive language suggests the employer will not be required to justify the employment decision.

The Legislative history supports an interpretation of the statute as establishing procedural protections for individuals with criminal histories—not second-guessing employment decisions. A Senate Judiciary Committee bill analysis described the individualized assessment as "a procedure for employers to follow when an employer has made a conditional offer." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1008 (2017–2018 Reg. Sess.) June 20, 2017, p. 7.) The bill analysis emphasized the absence of formal requirements for an individual assessment, stating, "While the language of this part of the bill is mandatory (the employer 'shall' make the individualized assessment), as a

---

Stat., § 364.03, subd. 1.) These and similar statutes from other states expressly prohibit the denial of employment unless the requisite relationship between the job and the conviction exists. California's statute, in contrast, contains no express prohibition, instead only requiring that the employer follow a set process.

practical matter, the requirement will act as more of a guideline. There is no indication of how long or thoughtful the employer's assessment must be .... [T]he practical effect of the provision is to encourage employers to think about whether their inclination to rescind an offer to someone based on criminal history is genuinely related to the demands of the job ...." (*Id.* at p. 8.)

Appellant relies on the FCA's implementing regulations in arguing the employer's individual assessment analysis is subject to review. Appellant cites *Robinson v. Fair Employment & Housing Com.* (1992) 2 Cal.4th 226, 234–235, for the proposition that although not binding, great weight is given to administrative regulations construing and implementing FEHA statutes. Appellant argues the regulations make clear that the term "direct and adverse relationship" is a substantive standard.

Appellant first cites California Code of Regulations, title 2, section 11017.1, former subdivisions (d)(1) and (g)[18] to argue the "direct and adverse" relationship is a substantive standard, requiring "a demonstrable relationship to successful performance on the job and in the workplace" because of the "specific position." This language serves to expand upon the statute's procedural requirements and does not further appellant's argument that we should second-guess an employer's decision.

Appellant next argues the regulation in effect at the time of the events in question contained a rebuttable presumption that reliance on a conviction seven or more years old does not meet the necessary direct and adverse standard. (Cal. Code Regs., tit. 2, § 11017.1, former subd. (g)(2).) A close reading of the regulation reveals this rebuttable presumption arises in the context of a

---

[18] Appellant cites to the version operative October 1, 2020.

claim that the employer's policy of considering convictions—other than those that employers are prohibited from considering under subdivision (c)—creates an adverse impact on individuals protected by the Act.[19] In that context, "If the policy or practice of considering criminal convictions creates an adverse impact on applicants or employees on a basis enumerated in the Act, the burden shifts to the employer to establish that the policy is nonetheless justifiable because it is job-related and consistent with business necessity." (Cal. Code Regs., tit. 2, § 11017.1, former subd. (g)(1).) The regulation then explained, "Bright-line conviction disqualification or consideration policies or practices that include conviction-related information that is seven or more years old are subject to a rebuttable presumption that they are not sufficiently tailored to meet the job-related and consistent with business necessity affirmative defense …." (Cal. Code Regs., tit. 2, § 11017.1, former subd. (g)(2).)

As appellant's claims do not arise in this context, the seven-year rebuttable presumption that existed in the cited regulation at the time is irrelevant. No such restriction on considering convictions more than seven years old exists in the statute. Therefore, we decline to consider this presumption advocated by appellant.[20]

---

[19] Such adverse impact on individuals on a basis protected by the Act includes, but is not limited to, "gender, race, and national origin." (Cal. Code Regs., tit. 2, § 11017.1, former subd. (f).)

[20] While it was suggested that the statute prohibit employers from considering felonies that occurred over seven years before the background check, the provision was removed from the final statute. (Assem. Floor, Concurrence in Senate Amendments,

Appellant has failed to convince us that a substantive review of UCLA's individualized assessment should be conducted by a court.[21] We decline to undertake such an analysis and affirm the trial court's determination that all the employer is required to do is to conduct its assessment in the manner called for under the FCA. While we review claims that employers have violated the statute, we decline to consider whether the employer reached an incorrect conclusion when considering whether a direct and adverse relationship exists.[22]

---

Analysis of Assem. Bill No. 1008 (2017–2018 Reg. Sess.) as amended Sept. 8, 2017.)

[21] We find appellant's references to individualized assessments in the contexts of suitability for probation (*Kody P. v. Superior Court* (2006) 137 Cal.App.4th 1030, 1033, 1037) and mental health (*People v. Mary H.* (2016) 5 Cal.App.5th 246, 259, fn. 6) to be unpersuasive.

[22] Appellant relies heavily on a Hawaii case, *Shimose v. Hawai'i Health Systems Corp.* (2015) 134 Hawaii 479, 485. In *Shimose*, the lower court granted summary judgment of a healthcare entity's claim that its failure to hire an individual convicted of possession with intent to distribute methamphetamine was justified because there existed the statutorily required "rational relationship" between the conviction and the duties and responsibilities of the position. The Supreme Court of Hawaii reversed, finding material fact issues existed as to the rational relationship between the drug conviction and the position. However, we note the Hawaii statute is significantly different from the one before us, making it "'an unlawful discriminatory practice … [f]or any employer to refuse to hire or employ … any individual … [b]ecause of … arrest and court record'" unless the conviction record bears a rational relationship to the duties and responsibilities of the position. (*Id.* at p. 484; see Hawaii Rev. Stats., §§ 378-2, 378-2.5.) Given the

### D. *Requirement of harm beyond the denial of the five-day response period*

The FCA mandates that applicants "shall have at least five business days to respond to [a preliminary disqualification notice] before the employer may make a final decision." (§ 12952, subd. (c)(3).) On January 5, 2022, UCLA sent appellant a letter advising him that his criminal history might disqualify him from employment but informing him he had five business days to submit evidence challenging the accuracy of the criminal history or provide evidence of rehabilitation or mitigation. On January 7, 2022, appellant was informed he was ineligible for the position, although the five-day period had not run.

The trial court found that UCLA's actions violated the FCA because UCLA denied appellant the statutorily-mandated five days to respond to its pre-adverse action letter. However, the court reasoned that in every case, the plaintiff must "prove a harm suffered as a result of the wrongful act alleged and facts that demonstrate a 'nexus,' i.e., a connection between … that harm and the act complained of." Consistent with this reasoning, the trial court ruled a jury would decide whether UCLA would have reached the same decision had appellant been given the full five business days to provide the additional evidence of rehabilitation. The jury was asked that question on the special verdict form and found that UCLA would still have disqualified

---

significant differences between the Hawaii statute at issue in *Shimose* and the one at issue here, we decline to consider the case.

appellant even if it had afforded him the full five days to respond.[23]

Appellant disagrees with this approach. Instead, appellant argues, the FCA confers upon applicants a statutory right to a minimum response opportunity timeframe. Appellant argues it is routinely recognized in various contexts that the denial of a legally guaranteed right, in and of itself, causes cognizable and redressible harm distinct from any actual or measurable damage.

We review the case law provided by the parties on this contested issue and conclude appellant has failed to show the trial court erred in requiring appellant to prove he was damaged by the procedural violation.

**1.** *General law regarding necessity of showing harm*

In civil actions, the general rule is that a plaintiff must prove the defendant's wrongful act caused harm. (See, e.g., *Uriell v. Regents of University of California* (2015) 234 Cal.App.4th 735, 743.) This rule applies whether the plaintiff's claim is based on common law or statutory law. (*Janis v. California State Lottery Com.* (1998) 68 Cal.App.4th 824, 832 [to maintain a private civil action for breach of statutory duty, plaintiffs must demonstrate the breach "was a proximate cause of the injury suffered"].) The Supreme Court has noted that, in actions seeking damages under FEHA, a plaintiff may recover "those damages 'generally available in noncontractual actions.'" (*State Dept. of Health Services v. Superior Court* (2003) 31 Cal.4th 1026, 1042.) Thus, the general law requiring a plaintiff to show harm to recover damages for a statutory violation applies in the FEHA context.

---

[23] Appellant does not challenge the jury findings.

It is generally required that a plaintiff show harm in the context of procedural due process violations as well. "[A]s a general rule, 'procedural due process violations, even if proved, are subject to a harmless error analysis.'" (*Thornbrough v. Western Placer Unified School Dist.* (2013) 223 Cal.App.4th 169, 200.)

In cases where the Legislature wants to grant statutory damages, "[i]t 'may authorize consumers and others whose rights have been violated to recover statutory damages or penalties absent … concrete harm ….'" (*Parsonage v. Wal-Mart Associates, Inc.* (2026) 118 Cal.App.5th 399, 411.) The statute at issue in *Parsonage*, Civil Code section 1786.50, specifically provides that an investigative consumer reporting agency that fails to comply with any requirement under that title is liable to the consumer who is the subject of the report for "[a]ny actual damages sustained by the consumer as a result of the failure or … ten thousand dollars ($10,000), whichever sum is greater." (Civ. Code, § 1786.50, subd. (a)(1).) The Legislature made no such provision for statutory penalties or damages in the FCA.

The authorities cited above suggest the trial court did not err in requiring appellant to prove he was harmed due to UCLA's violation of the five-day response period set forth in section 12952, subdivision (c)(3).

**2.** *Appellant's legal authorities are unpersuasive*

Appellant has provided no persuasive authority suggesting the general law cited above is inapplicable in this context. Appellant relies on *Soria v. Univision Radio Los Angeles, Inc.* (2016) 5 Cal.App.5th 570, which involved, in part, a claim for violation of the Moore-Brown-Roberti Family Rights Act (CFRA) (§§ 12945.1, 12945.2). The CFRA contains language similar to

that contained in the FCA, making it "unlawful for an employer … to 'interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right' provided by CFRA." (*Soria, supra*, 5 Cal.App.5th at pp. 600–601; see § 12952, subd. (a)(4) [making it unlawful to "interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right provided under this section"].) In the context of a claimed CFRA violation, the *Soria* court explained the claimant need only show: """(1) the employee's entitlement to CFRA leave rights; and (2) the employer's interference with or denial of those rights.""" (*Id.* at p. 601.) The *Soria* court concluded triable issues of material fact existed as to the plaintiff's claims, thus reversed the trial court's summary judgment ruling. The case does not discuss the propriety of nominal damages or whether actual harm is required.

*Barber v. State Personnel Bd.* (1976) 18 Cal.3d 395 (*Barber*) involved in part a *Skelly* violation in which the plaintiff was not afforded notice of the reasons for the punitive action and an opportunity to respond.[24] (*Barber*, at p. 403.) The cited portion of the opinion discusses the date from which the plaintiff's back pay should be paid. The case does not allow for nominal damages for a procedural violation but instead calculates such damages based on the plaintiff's proven losses during the period in which the procedural violation occurred.

*Economy v. Sutter East Bay Hospitals* (2019) 31 Cal.App.5th 1147, 1161, discusses a similar issue to that presented in *Barber*. In *Economy*, a doctor's privileges were suspended without prior notice and a hearing in violation of Business and Professions Code section 809 et seq. (*Economy*, at

---

[24] *Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194.

p. 1152.) In discussing the appropriate remedy for the procedural violation, the *Economy* court stated, "case law establishes that a plaintiff is entitled to recover lost wages until the due process violation has been corrected." (*Id.* at p. 1161.) The *Economy* court cited *Barber* for the proposition that "the appropriate remedy when a permanent civil service employee is denied a *Skelly* hearing prior to termination 'is to award back pay for the period of wrongful discipline.'" (*Economy*, at p. 1161, fn. omitted.) Again, the case does not suggest nominal damages are appropriate in a case such as this. Instead, *Economy*, like *Barber*, contemplates proof of actual damages.

Appellant also cites *Lujan v. Defenders of Wildlife* (1992) 504 U.S. 555, 578 (*Lujan*), in which the high court discussed the injury required to confer United States Constitution, article III standing. The case does not suggest nominal damages are appropriate for a violation of the five-day provision of the FCA.[25]

*Sweet v. Johnson* (1959) 169 Cal.App.2d 630, 632, is also irrelevant, as it involved nominal damages "which are presumed as a matter of law to stem merely from the breach of a contract." Breach of contract is not at issue in this matter.

---

[25] *Uzuegbunam v. Preczewski* (2021) 592 U.S. 279, 292, cited for the first time in appellant's reply brief, also discusses the issue of standing, holding "a request for nominal damages satisfies the redressability element of standing where a plaintiff's claim is based on a completed violation of a legal right." The high court clarified its decision concerned "only redressability," and any plaintiff must establish the other elements of standing and "plead a cognizable cause of action." (*Id.* at pp. 292–293.) Like *Lujan*, it does not suggest nominal damages are appropriate in this case.

Finally, *Raines v. U.S. Healthworks Medical Group* (S.D. Cal. 2024) 2024 WL 3850812 involved class certification of a class action involving a healthcare provider's violation of section 12940, subdivision (e), due to medical questions asked on its employment application. (*Raines*, at p. *1.) In discussing the typicality of the plaintiffs' class claims, the court noted "[p]laintiffs are no longer pursuing compensatory damages under FEHA or any other theory of liability, only nominal and punitive damages under FEHA" based on the alleged violations of 12940, subdivision (e). (*Raines*, at p. *6.) The case provides no authority for appellant's position that nominal damages are proper in this matter.

Appellant has failed to convince us the trial court erred in requiring appellant to prove he was harmed as a result of UCLA's violation of the five-day response period in this matter.

## DISPOSITION

The judgment is affirmed. Each side will bear its own costs of appeal.

CHAVEZ, Acting P. J.

We concur:

RICHARDSON, J.

GOORVITCH, J.

Filed 10/13/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JOHN McINERNEY,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>Defendant and Respondent. | B339467<br><br>(Los Angeles County Super. Ct. No. 23STCV16263)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

The opinion in the above-entitled matter filed on September 18, 2026, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports, and it is so ordered.

CHAVEZ, Acting P. J. RICHARDSON, J. GOORVITCH, J.