Jonathan Beacher
jonbeacher@gmail.com
PO Box 98
Seattle, WA 98111
Tel: (425) 523-7550
Plaintiff in Pro Se

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JONATHAN BEACHER, | Case No.: 2:26-cv-09014-AH-PVC |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS [Fed. R. Civ. P. 12(c)]** |
| vs. | |
| DOMUSO, INC., | Hearing Date: December 2, 2026 |
| Defendant. | Time: 1:30 p.m. |
| | Courtroom: 9C |
| | Judge: Hon. Anne Hwang |

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................ 6
II. LEGAL STANDARD ........................................ 7
A. Rule 12(c) ........................................ 7
B. The reasonable-belief standard under 12 U.S.C. § 5567(a) ........................ 8
III. ARGUMENT ........................................ 11

A. Defendant's characterization of the objection does not survive the standard. ..... 11

B. Section 5567(a)(4) turns on Plaintiff's belief, not on what the objections conveyed. ..... 13

C. Section 5531 reaches harmful practices that no specific rule addresses, and it is a law within the Bureau's jurisdiction. ..... 14

D. The motion never applies the unfairness or abusiveness elements, and cannot be granted on them. ..... 16

E. The Complaint pleads an objectively reasonable belief that the practice was an unfair, deceptive, or abusive act or practice under 12 U.S.C. § 5531, a law subject to the jurisdiction of the Bureau. ..... 17

F. In any event, Plaintiff's objections and report relate to § 5531 "definitively and specifically." ..... 21

G. The Complaint also pleads an objectively reasonable belief that the practice was inconsistent with Regulation E, a rule prescribed by the Bureau. ..... 23

H. The Complaint independently pleads protected activity under § 5567(a)(1). ..... 24

I. The Complaint pleads the subjective component directly. ..... 25

J. The question presented is one of first impression, and Rule 12 dismissal of a novel theory is especially disfavored. ..... 26

K. The Complaint pleads that Defendant knew of the protected activity. ..... 28

L. The statute's limits answer Defendant's floodgates concern. ..... 29

M. Any perceived deficiency should be cured by amendment, not dismissal. ..... 29

IV. CONCLUSION ..... 30

# TABLE OF AUTHORITIES

## Cases

American Nuclear Res., Inc. v. U.S. Dep't of Labor, 134 F.3d 1292 (6th Cir. 1998) .......... 22
Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) .......... 7
Boyd v. Accuray, Inc., 593 F. App'x 647 (9th Cir. 2015) .......... 21
CFPB v. Gordon, 819 F.3d 1179 (9th Cir. 2016) .......... 10, 20, 21
Chavez v. United States, 683 F.3d 1102 (9th Cir. 2012) .......... 7
Corley v. United States, 556 U.S. 303 (2009) .......... 15
Elec. Constr. & Maint. Co. v. Maeda Pac. Corp., 764 F.2d 619 (9th Cir. 1985) .......... 27
Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048 (9th Cir. 2003) .......... 30
FTC v. Neovi, Inc., 604 F.3d 1150 (9th Cir. 2010) .......... 15, 19, 21
FTC v. Wyndham Worldwide Corp., 799 F.3d 236 (3d Cir. 2015) .......... 16
Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542 (9th Cir. 1990) .......... 7, 12, 16
Hebbe v. Pliler, 627 F.3d 338 (9th Cir. 2010) .......... 7
Lopez v. Smith, 203 F.3d 1122 (9th Cir. 2000) (en banc) .......... 29
McGary v. City of Portland, 386 F.3d 1259 (9th Cir. 2004) .......... 27
McInerney v. Regents of the Univ. of Cal., No. B339467 (Cal. Ct. App. Sept. 18, 2026) .......... 20, 21
Moyo v. Gomez, 40 F.3d 982 (9th Cir. 1994) .......... 27
Platone v. U.S. Dep't of Labor, 548 F.3d 322 (4th Cir. 2008) .......... 21
Polich v. Burlington N., Inc., 942 F.2d 1467 (9th Cir. 1991) .......... 29
Rotkiske v. Klemm, 589 U.S. 8 (2019) .......... 14
Russello v. United States, 464 U.S. 16 (1983) .......... 8, 12
Sharkey v. J.P. Morgan Chase & Co., 660 F. App'x 65 (2d Cir. 2016) .......... 13

Slawin v. Bank of Am. Merch. Servs., No. 1:19-cv-04129-AT, Dkt. No. 47 (N.D. Ga. Sept. 30, 2020) .......... 27

Slawin v. Bank of Am. Merch. Servs., No. 1:19-cv-04129-AT, Dkt. No. 197 (N.D. Ga. Sept. 24, 2025) .......... 19, 27

Staub v. Proctor Hosp., 562 U.S. 411 (2011) .......... 28, 29

Van Asdale v. Int'l Game Tech., 577 F.3d 989 (9th Cir. 2009) .......... 10, 11, 13, 14, 21, 22, 23, 24, 25, 27, 30

Van Asdale v. Int'l Game Tech., 549 F. App'x 611 (9th Cir. 2013) .......... 27

Wadler v. Bio-Rad Laboratories, Inc., 916 F.3d 1176 (9th Cir. 2019) .......... 10, 11, 13, 23, 24, 25, 28

Wong v. Bell, 642 F.2d 359 (9th Cir. 1981) .......... 17

Zamani v. Carnes, 491 F.3d 990 (9th Cir. 2007) .......... 17

**Administrative Decisions**

Sylvester v. Parexel Int'l LLC, ARB No. 07-123 (ARB May 25, 2011) (en banc) .......... 22

Van v. JP Morgan Chase & Co., ARB No. 2023-0018 (ARB Nov. 5, 2024) .......... 15, 25

In re Bank of America, N.A., File No. 2022-CFPB-0004 (CFPB July 14, 2022) (consent order) .......... 16, 20, 24

In re Hello Digit, LLC, File No. 2022-CFPB-0007 (CFPB Aug. 10, 2022) (consent order) .......... 15, 20

Consumer Financial Protection Circular 2022-04, 87 Fed. Reg. 54346 (Sept. 6, 2022) (withdrawn May 12, 2025) .......... 16

**Statutes**

Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376 (2010) .......... 9

12 U.S.C. § 5481 .......... 9
12 U.S.C. § 5531 ..... 6, 8, 9, 10, 12, 14, 15, 16, 17, 18, 19, 20, 21, 23, 26, 29
12 U.S.C. § 5536 .......... 6, 8, 9, 10, 15, 17
12 U.S.C. § 5565 .......... 26
12 U.S.C. § 5567 .......... 6, 7, 8, 9, 10, 11, 12, 13, 14, 24, 25, 26, 27, 29
15 U.S.C. § 45(n) .......... 15
18 U.S.C. § 1514A .......... 8, 10
42 U.S.C. § 5851 .......... 14

**Regulations**

12 C.F.R. Part 1005 (Regulation E) .......... 8, 9, 12, 23, 24, 26
29 C.F.R. § 1985.114 .......... 8

**Rules**

Fed. R. Civ. P. 9(b) .......... 25
Fed. R. Civ. P. 12(b)(6) .......... 7, 27
Fed. R. Civ. P. 12(c) .......... 7
Fed. R. Civ. P. 15(a)(2) .......... 29

**Other Authorities**

5 C. Wright & A. Miller, Federal Practice and Procedure § 1357 (1969) ... 27

# I. INTRODUCTION

Plaintiff was a Quality Assurance ("QA") engineer at Domuso, Inc. ("Defendant"), a company whose platform tenants must use to pay their rent. Compl. ¶¶ 29, 57. Regression testing re-tests previously approved features to confirm that new code changes have not compromised them. Id. ¶ 3; Dkt. 20 ¶ 3. Plaintiff objected to, and reported to the Consumer Financial Protection Bureau ("Bureau"), Defendant's policy of releasing each new payment feature to consumers with no regression testing of any kind until its automated tests existed. Compl. ¶¶ 2, 74, 97, 108. Under that policy, the Rewards feature broke, and consumers' account records were wrong until consumers found the errors. Id. ¶¶ 68-74. Defendant laid Plaintiff off on February 11, 2025. Id. ¶ 4. Defendant moves for judgment on the pleadings on two grounds: that Plaintiff's objections were internal disagreements about testing, not protected activity, and that the decisionmakers did not know of the Bureau report. Def.'s Mem. (Dkt. 21-1) ("Mot.") at 5, 15-16. The motion should be denied for four reasons. First, the statute protects objections to "any activity, policy, practice, or assigned task" the employee reasonably believed unlawful, 12 U.S.C. § 5567(a)(4), and Defendant itself called what Plaintiff objected to a "policy" and a "practice." Compl. ¶¶ 125, 166; Mot. at 11, 14, 17; see Part III.A, infra. Second, the prohibition of unfair, deceptive, or abusive acts or practices is a law "enforceable by the Bureau," which § 5567(a)(4) reaches, and a "provision of this title," which § 5567(a)(1) reaches. 12 U.S.C. §§ 5531(a), 5536(a)(1)(B), 5567(a)(1), (a)(4); see Part II.B, infra. Yet the motion never applies the unfairness or abusiveness elements, though the Complaint rests principally on Plaintiff's belief that the practice was unfair or abusive. See Parts III.B through III.H, infra. Third, the motion ignores the Complaint's allegations. It treats one release as the only conduct at issue, calls the predicted injury hypothetical though Rewards shows it had already happened, and calls Plaintiff's legal theories "post hoc," Mot. at 13, though the Complaint alleges

Plaintiff held the belief when objecting and reported the practice to the Bureau while still employed. Compl. ¶¶ 97, 105, 108, 119, 168; see Parts III.A through III.F and III.I, infra. Fourth, Defendant does not dispute that it knew of Plaintiff's objections, and it says the selection was driven, among other things, by Plaintiff's "logjamming" of its testing process. Mot. at 6, 15; Compl. ¶ 127; see Part III.K, infra. No reported decision appears to have addressed whether objections like Plaintiff's are protected under § 5567, and the Ninth Circuit disfavors resolving novel theories on the pleadings. See Part III.J, infra. The motion should be denied or, if the Court finds any deficiency, leave to amend should be granted.

## II. LEGAL STANDARD

### A. Rule 12(c)

A motion for judgment on the pleadings is governed by the Rule 12(b)(6) standard: judgment is proper only if the movant clearly establishes that, taking the non-moving party's allegations as true, no material fact remains in dispute and that it is entitled to judgment as a matter of law. Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1550 (9th Cir. 1990) (moving party must clearly establish its entitlement on the face of the pleadings); Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir. 2012) (Rule 12(c) and Rule 12(b)(6) motions are governed by the same standard). On this motion, the Complaint's well-pleaded allegations are accepted as true even where Defendant denies them, Defendant's admissions are established, and reasonable inferences are drawn in Plaintiff's favor. Hal Roach, 896 F.2d at 1550. A well-pleaded complaint may proceed even if a court finds actual proof improbable and recovery unlikely. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). Because Plaintiff appears pro se, the Complaint is construed liberally. Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (courts continue to construe pro se filings liberally after Iqbal). This

action is before the Court for de novo review under 12 U.S.C. § 5567(c)(4)(D)(i) and 29 C.F.R. § 1985.114; OSHA's preliminary findings receive no deference.

**B. The reasonable-belief standard under 12 U.S.C. § 5567(a)**

Section 5567 protects a covered employee who has "provided . . . information to the employer, the Bureau, or any other State, local, or Federal, government authority or law enforcement agency relating to any violation of, or any act or omission that the employee reasonably believes to be a violation of, any provision of this title or any other provision of law that is subject to the jurisdiction of the Bureau, or any rule, order, standard, or prohibition prescribed by the Bureau," 12 U.S.C. § 5567(a)(1), or who has "objected to, or refused to participate in, any activity, policy, practice, or assigned task that the employee (or other such person) reasonably believed to be in violation of any law, rule, order, standard, or prohibition, subject to the jurisdiction of, or enforceable by, the Bureau," id. § 5567(a)(4). The two provisions define different protected activity. Section 5567(a)(1) protects providing information relating to a violation the employee reasonably believes occurred; § 5567(a)(4) protects objecting to or refusing to participate in an activity the employee "reasonably believed" unlawful, and its text asks about that belief, not about what the objection or refusal conveyed. Id. § 5567(a)(1), (a)(4). See Russello v. United States, 464 U.S. 16, 23 (1983) (where Congress includes particular language in one section of a statute but omits it in another, it is generally presumed to act intentionally). The Sarbanes-Oxley Act's whistleblower provision has no counterpart to § 5567(a)(4); it protects providing information and participating in proceedings. 18 U.S.C. § 1514A(a)(1)-(2). This brief uses "protected activity" for activity under either provision. Whether Defendant in fact violated §§ 5531 and 5536 or Regulation E is not an element of the claim and is not before the Court.

The statute defines its coverage terms. A "covered employee" is "any

individual performing tasks related to the offering or provision of a consumer financial product or service." 12 U.S.C. § 5567(b). A "covered person" is "any person that engages in offering or providing a consumer financial product or service." Id. § 5481(6)(A). A "consumer financial product or service" is a financial product or service "offered or provided for use by consumers primarily for personal, family, or household purposes," id. § 5481(5)(A), and "financial product or service" includes "providing payments or other financial data processing products or services to a consumer by any technological means." Id. § 5481(15)(A)(vii). Section 5567 is part of Title X of the Dodd-Frank Act, which Congress named the Consumer Financial Protection Act of 2010, and that title is what § 5567(a)(1) means by "this title." See Pub. L. No. 111-203, tit. X, 124 Stat. 1376, 1955 (2010) (codified principally at 12 U.S.C. §§ 5481-5603). The provisions prohibiting unfair, deceptive, or abusive acts or practices are in the same title. 12 U.S.C. §§ 5531, 5536. Congress used the same structure to define the law the Bureau administers: "Federal consumer financial law" means "the provisions of this title, the enumerated consumer laws, the laws for which authorities are transferred under subtitles F and H, and any rule or order prescribed by the Bureau under this title, an enumerated consumer law, or pursuant to the authorities transferred under subtitles F and H." Id. § 5481(14). That definition has four parts: the provisions of Title X itself, including §§ 5531 and 5536; the eighteen enumerated consumer laws, id. § 5481(12); laws whose administration was transferred to the Bureau under subtitles F and H; and the Bureau's rules, including Regulation E, 12 C.F.R. Part 1005. Defendant's list of enumerated laws is only the second. Section 5567(a)(1) therefore covers, in its own words, information about a practice reasonably believed to violate §§ 5531 and 5536, and § 5567(a)(4) covers objections to such a practice, because those sections are laws "subject to the jurisdiction of, or enforceable by, the Bureau." Id. §§ 5531(a), 5567(a)(1), (a)(4).

The prohibition on which Plaintiff's beliefs rest appears in two sections of Title X. Section 5531(a) authorizes the Bureau to "take any action authorized under part E to prevent a covered person or service provider from committing or engaging in an unfair, deceptive, or abusive act or practice under Federal law in connection with any transaction with a consumer for a consumer financial product or service, or the offering of a consumer financial product or service." 12 U.S.C. § 5531(a). Sections 5531(c) and (d) set the standards: a practice is unfair if "the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers" and "such substantial injury is not outweighed by countervailing benefits to consumers or to competition," id. § 5531(c)(1)(A)-(B), and abusive if, among other things, it "takes unreasonable advantage of . . . (B) the inability of the consumer to protect the interests of the consumer in selecting or using a consumer financial product or service; or (C) the reasonable reliance by the consumer on a covered person to act in the interests of the consumer," id. § 5531(d)(2). Section 5536(a)(1)(B) supplies the prohibition itself: it is unlawful for any covered person or service provider "to engage in any unfair, deceptive, or abusive act or practice." Id. § 5536(a)(1)(B). The statute does not define deception; the Ninth Circuit asks whether a representation, omission, or practice is likely to mislead consumers acting reasonably about a material matter. CFPB v. Gordon, 819 F.3d 1179, 1192-93 (9th Cir. 2016).

Section 5567 uses the same reasonable-belief standard and burden-shifting framework as the Sarbanes-Oxley whistleblower provision, compare 12 U.S.C. § 5567(a), (c)(3) with 18 U.S.C. § 1514A(a), (b)(2), so decisions construing that provision, including the Ninth Circuit's, guide the inquiry. The standard has two components: the employee must actually have held the belief, and a reasonable person with the same training, experience, and factual knowledge must have been able to hold it. Van Asdale v. Int'l Game Tech., 577 F.3d 989, 1000-01 (9th Cir. 2009) (belief must be both subjectively held and objectively reasonable); Wadler

v. Bio-Rad Laboratories, Inc., 916 F.3d 1176, 1187-88 (9th Cir. 2019) (objective reasonableness measured by the knowledge available to a reasonable person with the employee's training and experience). The measure is a reasonable person in the employee's position, not a lawyer, a compliance officer, or a court. The belief need not be correct; a reasonable but mistaken belief is protected. Van Asdale, 577 F.3d at 1001 (reasonable belief protected even if mistaken). The Ninth Circuit has called the showing a "minimal threshold requirement," met where the employee reasonably believed that there might have been a violation. Wadler, 916 F.3d at 1187-88 (quoting Van Asdale, 577 F.3d at 1001).

## III. ARGUMENT

### A. Defendant's characterization of the objection does not survive the standard.

The motion paraphrases § 5567(a)(4) as protecting objections to "conduct," Mot. at 8-9, but the statute protects objections to "any activity, policy, practice, or assigned task," see Part II.B, supra, and policy was Defendant's own word before this motion: Defendant told the California Labor Commissioner that Plaintiff departed from "Domuso's testing policy – which everyone else followed," and accused Plaintiff of "flouting several company policies (repeatedly and without improvement), including those related to automated testing." Compl. ¶¶ 125, 166. The motion itself calls the same policy "a lawful practice." Mot. at 11; see id. at 13. Whether the policy and practice were lawful is not the question; § 5567 asks whether a reasonable person could believe they were not. A policy applied to every release is a practice, and the DCash ACH (Plaid) testing was also a task assigned to Plaintiff under a process Defendant called "non-negotiable." Compl. ¶¶ 109, 125, 127. Nor does labeling the objections "internal disagreements," Mot. at 5, change the analysis: § 5567(a)(1) protects information provided "to the

employer," and § 5567(a)(4) names no recipient at all, an omission presumed intentional. See Russello, 464 U.S. at 23; Part II.B, supra. The statute also protects an employee's activity "whether at the initiative of the employee or in the ordinary course of the duties of the employee," 12 U.S.C. § 5567(a), so a QA engineer's objections are not excluded because raising defects was part of the job.

Defendant characterizes Plaintiff's objections as concerning a "software-testing methodology," Mot. at 8, and "the sequencing of manual and automated testing," id. at 16. That label traces to ¶ 189 of the Complaint, pleaded in the alternative and referring back to the allegations describing how the policy operated, Compl. ¶¶ 83-85, 189, and it omits what the objection was about: that the policy let defects reach consumers' payment records undetected, because a newly released feature had no manual or automated regression testing until its automated tests existed. Id. ¶¶ 70, 74, 83, 85, 97. The Complaint ties that gap to the policy itself: when the Rewards defect was introduced, the feature had neither feature-specific automated regression tests "nor required manual regression testing under Defendant's test and release policy." Id. ¶ 74; see also id. ¶ 115. Pre-release manual testing does not answer the objection; it shows a feature works on the day it is released, not that it still works after a later release changes the shared code. Id. ¶ 76. Defendant's Answer denies these allegations, Dkt. 20 ¶¶ 70, 74, 76, 83-85, but on this motion the Complaint's allegations are taken as true notwithstanding those denials, Hal Roach, 896 F.2d at 1550; see Part II.A, supra, so a characterization that depends on the denials cannot be credited.

The statute asks what the employee reasonably believed about the policy's consequences, not whether the dispute used technical vocabulary. Plaintiff did not need to cite 12 U.S.C. § 5531 or Regulation E. See Part III.F, infra. Defendant itself acknowledges that the pleaded communications warned that releasing payment features without completed automated regression testing could permit defects to reach consumers. Mot. at 17; Compl. ¶ 97. That is not an objection

about only deadlines, design materials, locators, and the order of testing, Mot. at 12, or a mere "workflow dispute," id. at 5, 14. Defendant's own management treated the matter as one of legality: before Plaintiff's report, the Director of Payments questioned the legality of the Rewards correction, and on the October 2024 call the Director of Engineering asked Plaintiff whether the policy was illegal. Compl. ¶¶ 73, 106; see Sharkey v. J.P. Morgan Chase & Co., 660 F. App'x 65, 68 (2d Cir. 2016) (employer's own training materials identifying the conduct as "red flags" supported the reasonableness of the employee's belief). An employee in that position need not investigate or prove a violation before raising the concern. Wadler, 916 F.3d at 1188-89 (citing Van Asdale, 577 F.3d at 1002).

**B. Section 5567(a)(4) turns on Plaintiff's belief, not on what the objections conveyed.**

Defendant relies on Van Asdale's statement that an employee's communications must "definitively and specifically" relate to a category the statute covers. Mot. at 12 (citing Van Asdale, 577 F.3d at 996-97). The phrase has limited application to the provision on which this case principally rests, because § 5567(a)(4) turns on the employee's belief rather than the content of a report. See Part II.B, supra. Defendant's own formulation, that a "report must convey, in substance, that the employer is violating a covered law," Mot. at 12, has the same limit: it describes what a report conveys, the subject of § 5567(a)(1), which protects providing "information." An objection or refusal under § 5567(a)(4) is protected because of what the employee "reasonably believed" about the activity, and a refusal may convey nothing at all. The standard examines the reasonableness of the belief, "not whether the complainant actually communicated the reasonableness of those beliefs to management." Wadler, 916 F.3d at 1187-88 (internal quotation marks omitted). Congress knows how to require an employee to explain a refusal: the Energy Reorganization Act protects a refusal only "if the

employee has identified the alleged illegality to the employer." 42 U.S.C. § 5851(a)(1)(B). Section 5567(a)(4) contains no such condition, and supplying one would be "not a construction of a statute, but, in effect, an enlargement of it by the court." Rotkiske v. Klemm, 589 U.S. 8, 14 (2019) (internal quotation marks omitted); see id. ("Atextual judicial supplementation is particularly inappropriate when . . . Congress has shown that it knows how to adopt the omitted language or provision."). The Complaint pleads, in the alternative, that if Plaintiff's conduct was what Defendant describes, "logjamming" a "non-negotiable" testing process and "openly ignoring his supervisor's repeated directives," it was such a refusal. Compl. ¶¶ 126, 127, 189. Neither Van Asdale nor any other decision Defendant cites applies either standard to § 5567(a)(4), and the Court need not decide whether they should apply, because Plaintiff's objections meet both: they relate to § 5531 "definitively and specifically" and convey, in substance, that the practice is unlawful. See Part III.F, infra.

**C. Section 5531 reaches harmful practices that no specific rule addresses, and it is a law within the Bureau's jurisdiction.**

Defendant's motion rests on one premise: because no Bureau rule requires automated regression testing before release, no reasonable person could believe § 5531 reached the practice. Mot. at 5, 10. That premise misunderstands how § 5531 works. Section 5531 does not catalog specific forbidden practices, such as a required testing sequence. It reaches any unfair, deceptive, or abusive "act or practice," and it defines unfairness and abusiveness by their effect on consumers, see Part II.B, supra, so that it reaches harmful practices that no more specific statute or regulation addresses. If a belief that a practice violated § 5531 were reasonable only when some other rule already prohibited the practice, no one could ever reasonably believe a practice violated § 5531 alone, and § 5567 would protect objections under every law within the Bureau's jurisdiction except § 5531

itself. See Corley v. United States, 556 U.S. 303, 314 (2009) (canon against surplusage). The practice here governed how the software that moves tenants' rent was released to consumers, and under it, wrong records reached them. Compl. ¶¶ 71, 91, 197-198.

Defendant's list of eighteen "enumerated consumer laws," Mot. at 9-10, is only one part of "Federal consumer financial law." Another part is Title X itself, where Congress placed §§ 5531 and 5536. See Part II.B, supra. Reversing an ALJ who had applied the same eighteen-law theory, the ARB held that the enumerated laws are only one category of laws that can support CFPA protected activity, and, applying its fair-notice pleading standard, it sustained a complaint alleging reports of practices the employee reasonably believed were unfair, deceptive, or abusive. Van v. JP Morgan Chase & Co., ARB No. 2023-0018, ALJ No. 2022-SOX-00028, slip op. at 5, 13-17 (ARB Nov. 5, 2024). The motion itself treats § 5531 as Bureau-enforceable. Mot. at 12, 14.

Binding authority confirms that how a payments company runs the payment software consumers depend on can be an unfair practice. The unfairness test in § 5531(c)(1) tracks § 5(n) of the FTC Act, 15 U.S.C. § 45(n), and in Neovi the Ninth Circuit affirmed judgment against an online check-payment service that created and delivered checks without verifying the requester's authority, holding that neither deceit nor actual knowledge of the harm was required and that a practice injures consumers when the injury is its predictable consequence. FTC v. Neovi, Inc., 604 F.3d 1150, 1153-56 (9th Cir. 2010). Defendant itself told the California Labor Commissioner that code changes inevitably create issues in existing parts of its program. Compl. ¶ 65. The Bureau's published enforcement is consistent. The Bureau found deceptive practices where an automated savings tool promised no overdrafts and consumers overdrew when its algorithm miscalculated. In re Hello Digit, LLC, File No. 2022-CFPB-0007, Consent Order ¶¶ 8-9, 11-14, 34-38 (Aug. 10, 2022). The Bureau also found unfair practices

where Bank of America froze consumers' accounts and denied their error claims based solely on an automated fraud filter it knew or should have known would sometimes reach the wrong result, and abusive practices where it retroactively applied that filter to reverse credits it had already paid. In re Bank of America, N.A., File No. 2022-CFPB-0004, Consent Order ¶¶ 14, 21, 43-54 (July 14, 2022). Both orders were public more than two years before Plaintiff's 2024 objections and report, and both treated a company's reliance on automated systems that produce wrong results for consumers as conduct the Act reaches. Compl. ¶¶ 196-198. The Bureau also published a circular in 2022 concluding that inadequate data-security practices, including failing to apply software updates, can be unfair because consumers cannot avoid harm from measures they neither know of nor control. Consumer Financial Protection Circular 2022-04, 87 Fed. Reg. 54346, 54346-47 (Sept. 6, 2022) (citing FTC v. Wyndham Worldwide Corp., 799 F.3d 236, 246 (3d Cir. 2015)). That reasoning applies equally to testing software updates. The Bureau withdrew the circular in May 2025, but it was the Bureau's published position when Plaintiff objected in October 2024.

**D. The motion never applies the unfairness or abusiveness elements, and cannot be granted on them.**

As the moving party, Defendant must show on the face of the pleadings that it is entitled to judgment as a matter of law. Hal Roach, 896 F.2d at 1550; see Part II.A, supra. Section 5531 prohibits three categories of practices: unfair, deceptive, and abusive. The motion addresses only one of them, deception. Mot. at 13-14. The motion asserts that § 5531 does not regulate testing decisions, id. at 11, 13, but it never applies the unfairness elements of § 5531(c) or the abusiveness elements of § 5531(d) to the policy and practice, the beliefs the Complaint principally pleads. Compl. ¶¶ 191-193, 196-197. Defendant's assertion cannot substitute for the analysis: because the unfairness and abusiveness

standards turn on a practice's effect on consumers, see Part III.C, supra, whether this practice falls outside them is the very question Defendant did not brief. Because a reasonable belief under either standard is sufficient, Plaintiff's claim survives on those beliefs alone. Nor may the motion be granted on unfairness or abusiveness grounds Defendant never briefed without notice and an opportunity to respond. Wong v. Bell, 642 F.2d 359, 362 (9th Cir. 1981). Nor need the Court consider that analysis if Defendant offers it for the first time in reply. Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007).

**E. The Complaint pleads an objectively reasonable belief that the practice was an unfair, deceptive, or abusive act or practice under 12 U.S.C. § 5531, a law subject to the jurisdiction of the Bureau.**

The law Plaintiff principally believed the practice violated is the Act's prohibition of unfair, deceptive, or abusive acts or practices. 12 U.S.C. §§ 5531, 5536(a)(1)(B); see Part II.B, supra. The Complaint alleges that Defendant is a covered person and Plaintiff was a covered employee, Compl. ¶¶ 32, 39; see Part II.B, supra, and Defendant admits facts that support both: residential tenants "may pay rent by electronic means" through Defendant's platform, Dkt. 20 ¶ 39, and Plaintiff's duties included "testing and validating certain consumer-facing features" of it, id. ¶ 32. Defendant contends Plaintiff's belief must approximate the elements of a violation, Mot. at 12; the Complaint pleads each standard and Plaintiff's belief under each, Compl. ¶¶ 191-198, as follows.

The practice, in Defendant's own words. Defendant's description of its testing to OSHA treats manual testing as a step that is completed and regression testing as something automated tests perform; it does not mention manual regression testing. Compl. ¶ 63. The Complaint pleads what happened before a feature's automated tests existed: the feature was tested manually and approved, approval released it to consumers, and its automated regression tests were built

only afterward, with no manual regression testing for the feature required in the meantime. Id. ¶¶ 2, 70, 74, 77-79, 83-85. Rewards, released on or around July 3, 2024, was still in that interval when a deployment on or around August 17, 2024 broke it; consumers, not Defendant, found the defect and reported it. Id. ¶¶ 68-74, 76. The DCash ACH (Plaid) pipeline was released into that same interval on or around October 15, 2024, over Plaintiff's objections. Id. ¶¶ 80-82, 97.

Unfair. The chain Defendant calls hypothetical, Mot. at 5, had already occurred. Defendant describes Plaintiff's belief as a chain of contingencies and faults the Complaint for not alleging injury from the DCash ACH (Plaid) release. Mot. at 5, 11, 13. The motion does so although it concedes that "[t]he point is not that Plaintiff must plead actual consumer harm." Id. at 11. Under Defendant's practice, each step of the chain Defendant describes had already occurred: a feature released on or around July 3, 2024 without regression testing of either kind, a deployment on or around August 17, 2024 that broke it, wrong records for, on information and belief, all or substantially all enrolled consumers, discovery by consumers rather than Defendant, and a manual correction of the production database. Compl. ¶¶ 68-74. Rewards was not an unrelated incident, Mot. at 14; it was the practice's result. A belief that a practice is likely to produce again the injury it has already produced is not speculation; it is the inference § 5531(c)(1) contemplates. Defendant's premise that the policy was "a lawful practice" that "might someday contribute to a violation," Mot. at 11, also misreads § 5531: a practice that is likely to cause substantial injury consumers cannot avoid is itself unfair, 12 U.S.C. § 5531(c)(1), so the violation does not wait for the harm. The violation Plaintiff believed in was the practice itself, not a "hypothetical downstream event." Mot. at 13.

When the only regression testing of a feature between its release and the completion of its automated tests comes from customers who encounter the defects, a QA engineer could reasonably believe the practice is likely to cause

substantial injury. 12 U.S.C. § 5531(c)(1). What Defendant calls "operational risk," Mot. at 11, is the likely substantial injury that standard describes. A court has found reports of a possible harm to consumers sufficient to reach a jury on CFPA protected activity. Slawin v. Bank of Am. Merch. Servs., No. 1:19-cv-04129-AT, Dkt. No. 197 at 24 (N.D. Ga. Sept. 24, 2025) ("It is not difficult to imagine the impact of such a possible or actual breach on consumers within the ambit of the CFPB's regulation."). Defendant's own words go to likelihood: it told the Labor Commissioner that "code changes inevitably create issues in other, pre-existing areas of the program," the very risk regression testing exists to catch. Compl. ¶ 65; Dkt. 20 ¶ 3. So does the Rewards incident: it occurred under exactly the conditions Plaintiff had objected to for years, and the defect was reproducible, so a regression test would have caught it. Compl. ¶¶ 68-74, 97, 168. Substantiality follows from both: the DCash ACH (Plaid) pipeline, released under the same practice, draws consumers' rent from their bank accounts, where a defect means failed or misapplied payments, late fees, and collections, injury of a kind already publicly reported on this platform; and Rewards, on information and belief, had already reached all or substantially all enrolled consumers. Id. ¶¶ 59-62, 71, 78-81, 101, 104; see Neovi, 604 F.3d at 1157 (substantial injury includes a small harm to a large number of people or a significant risk of concrete harm).

The injury is not reasonably avoidable. 12 U.S.C. § 5531(c)(1)(A). Tenants do not choose Defendant's platform and cannot leave it; the Terms make every payment final and direct disputes to landlords who cannot correct Defendant's records; and correction occurs only if Defendant chooses to alter its own database. Compl. ¶¶ 53-55, 57, 71, 102, 199; see Neovi, 604 F.3d at 1158 (avoidability turns on whether consumers had a free and informed choice). Plaintiff did not object to the Terms as a separate practice, Mot. at 15; they matter because, under them, a defect leaves the consumer with an error the consumer cannot correct.

Compl. ¶¶ 199, 201. Nor is there a countervailing benefit, 12 U.S.C. § 5531(c)(1)(B): Defendant's stated reason for deferring automated regression tests was its own cost, and deferral did not avoid that cost but postponed it until after the feature had reached consumers. Compl. ¶¶ 82, 169, 202.

Abusive. Tenants cannot select or replace the provider, Compl. ¶¶ 55, 57, and they must rely on Defendant to record their rent accurately, because its records determine whether rent counts as paid, what fees follow, and what goes to collections. Id. ¶¶ 91, 197. An employee could reasonably believe that releasing payment features with no regression testing except what customers supplied by encountering the defects, while describing automated testing as an expense, took unreasonable advantage of consumers' inability to protect themselves and of their reliance, particularly after the Rewards defect left consumers' records wrong until consumers found the errors. Id. ¶¶ 3, 54, 57, 100, 118, 169, 197; 12 U.S.C. § 5531(d)(2)(B)-(C); see In re Bank of America, Consent Order ¶¶ 48-54 (consumers could not control how or when the bank's automated process would resolve their claims, so the bank took unreasonable advantage of their inability to protect their interests).

Deceptive. Defendant's payment platform displays to each consumer the record of that consumer's payments, Compl. ¶ 198, and the Terms make every payment final and place responsibility for accuracy on the consumer. Id. ¶¶ 53-54. An undetected defect could make that record wrong, as Rewards did, misleading consumers about whether their rent was paid. Id. ¶ 198; see Gordon, 819 F.3d at 1192-93; Part III.C, supra (In re Hello Digit). The Court cannot conclude as a matter of law that no reasonable QA engineer could have held these beliefs.

Defendant asks the Court for a categorical rule: that no reasonable person could believe a testing practice like this one violates § 5531. See Mot. at 11, 13. None of the three decisions Defendant offers as examples establishes that rule. Defendant cites McInerney v. Regents of the University of California, No.

B339467, slip op. at 17 (Cal. Ct. App. Sept. 18, 2026), for the proposition that complaints about a background-check process the law permitted, which never identified a required step the employer skipped, were not protected. Mot. at 13. McInerney affirmed summary judgment under a different statute, and no statute permits releasing payment software without regression testing. Platone v. U.S. Department of Labor, 548 F.3d 322, 327 (4th Cir. 2008), turned on the Sarbanes-Oxley Act's fraud categories: the employee reported billing discrepancies, and "[a] billing discrepancy, without more, does not equal fraud." Id. Section 5531 is broader. Unfairness and abusiveness turn on a practice's effect on consumers; neither requires fraud. 12 U.S.C. § 5531(c)(1), (d)(2); see Neovi, 604 F.3d at 1155-56 (neither deceit nor knowledge of the harm required). Even deception requires no intent to deceive. See Gordon, 819 F.3d at 1192-93 (listing the elements of deception, none of which is intent). And Boyd v. Accuray, Inc., 593 F. App'x 647, 648 (9th Cir. 2015), affirmed summary judgment for the employer where the employee produced no evidence, and says nothing about what a complaint must plead.

**F. In any event, Plaintiff's objections and report relate to § 5531 "definitively and specifically."**

Defendant quotes Van Asdale's "definitively and specifically" standard, Mot. at 12, but not how the court applied it. In Van Asdale itself, the court found the standard met because of what the employee told the company's general counsel: that named executives had known of, and had not disclosed before the merger, a document undermining a key patent. 577 F.3d at 997. The Ninth Circuit did so although the general counsel did not believe the employee had used the word "fraud"; the court explained that an employee need not cite the specific code section believed to have been violated, and treated the general counsel's impression that the employee believed the company had been misled as

supporting evidence. Id. Plaintiff's objections likewise identified specific conduct and its consequence: in Defendant's own words, Plaintiff's pleaded communications "complained, among other things, . . . that releasing payment features without completed automated regression testing could permit defects to reach consumers." Mot. at 17; Compl. ¶ 97. And Defendant's own managers understood the matter as one of legality: the Director of Engineering asked Plaintiff whether the policy was illegal, and the Director of Payments questioned the legality of the Rewards correction. Compl. ¶¶ 73, 106.

The phrase "definitively and specifically" comes from an Energy Reorganization Act case, where the Sixth Circuit required that an employee's acts "implicate safety definitively and specifically," and explained that protected concerns were typically "both concrete and continuing" and directed at a procedural hazard rather than an isolated incident. American Nuclear Res., Inc. v. U.S. Dep't of Labor, 134 F.3d 1292, 1295-96 (6th Cir. 1998). Defendant's argument depends on reading the Complaint as if Plaintiff had objected to a single release: "[d]escribing DCash as a 'payment' feature does not change what Plaintiff objected to." Mot. at 13; see id. at 5. The Complaint alleges continuing objections to a policy, not a complaint about one release. Plaintiff objected to the policy throughout Plaintiff's employment, including in 2022 to Defendant's Chief Executive Officer, Compl. ¶¶ 97, 168; the policy applied to every new feature, id. ¶¶ 85, 95; Plaintiff's objections "were not limited to the objections concerning the DCash ACH (Plaid) directive," id. ¶ 119; and they identified the consequence, defects reaching consumers' financial accounts, id. ¶ 97. Objections of that kind are concrete and continuing, and directed at what the origin case called a procedural hazard rather than an isolated incident. See American Nuclear Res., 134 F.3d at 1295-96. The ARB, which carried the phrase into the Sarbanes-Oxley Act before Van Asdale adopted it, 577 F.3d at 996-97, has since abandoned it. Sylvester v. Parexel Int'l LLC, ARB No. 07-123, slip op. at 17-19 (ARB May 25,

2011) (en banc). In Wadler, the Ninth Circuit held that a jury could find protected activity even though the reported discrepancies might not "specifically implicate" the rule at issue. 916 F.3d at 1187-88.

A practice is unfair if it causes or is likely to cause substantial injury to consumers that they cannot reasonably avoid and that is not outweighed by countervailing benefits to consumers or to competition, 12 U.S.C. § 5531(c)(1), so an objection warning that the practice could let defects reach consumers conveys, in substance, that the practice itself is unlawful. See Part III.E, supra. As Van Asdale applied it, and consistent with Wadler, the phrase asks whether the employee identified specific conduct tied to a covered law. Plaintiff's objections did: payment features released to consumers with no regression testing of any kind until their automated tests existed, Compl. ¶¶ 2, 74, 97, and the DCash ACH (Plaid) pipeline, which draws consumers' rent from their bank accounts, released under the same practice, id. ¶¶ 78-82. When Plaintiff objected to the DCash directive, Plaintiff knew Rewards had broken in exactly that way. Id. ¶ 100. Plaintiff had asked at a standup whether the defect was reproducible, and a senior engineer who knew of Plaintiff's objections confirmed that it was, though the same engineer maintained that manual testing had been enough. Id. ¶¶ 72, 76, 120. Plaintiff then described the break in the Bureau report. Id. ¶¶ 110-111. Plaintiff's Complaint meets the standard under any formulation.

**G. The Complaint also pleads an objectively reasonable belief that the practice was inconsistent with Regulation E, a rule prescribed by the Bureau.**

The Complaint also pleads Plaintiff's belief that the practice was inconsistent with Regulation E, 12 C.F.R. Part 1005, whose error-resolution provisions Defendant's own Terms of Service recite. Compl. ¶¶ 56, 200; Dkt. 20 ¶ 93. Defendant faults Plaintiff for not naming Regulation E, Mot. at 5, 11, 14, while conceding that "[a]n employee need not cite a statute by name," id. at 12;

Plaintiff's October 2024 report to the Bureau raised "regulations governing payment processing and financial record-keeping." Compl. ¶ 111. Regulation E does not prescribe testing methods, Mot. at 10, but Plaintiff's belief did not depend on one; it concerned errors in electronic fund transfers that could occur and persist undetected, the subject of Regulation E's error-resolution provisions, and the Bureau has treated an automated process that left consumers stuck with such errors as a Regulation E violation. Compl. ¶ 200; In re Bank of America, Consent Order ¶¶ 55-58.

**H. The Complaint independently pleads protected activity under § 5567(a)(1).**

Even if the Court found the objections insufficient under § 5567(a)(4), the Complaint independently pleads protected activity under § 5567(a)(1): Plaintiff provided information to Defendant throughout Plaintiff's employment, including by objecting to the policy on an October 2024 call on which the Director of Engineering asked whether the policy was illegal, and to the Bureau in October 2024 in a report identifying the policy, the Rewards defect, and two consumers who reported it, and urging an investigation into possible violations of rules governing payment processing and financial record-keeping. Compl. ¶¶ 97-99, 106, 108-118, 168, 190. Defendant itself treats the Bureau report as directed to a covered law. Mot. at 15. Defendant's objection that the report raised only potential violations, id. at 14, misreads the statute: no completed or certain violation is required, and an employee who reasonably believes there might have been a violation is protected for suggesting further inquiry. Van Asdale, 577 F.3d at 1001-02 (employees who reasonably believed there might have been fraud were protected for suggesting further inquiry); Wadler, 916 F.3d at 1187-88 (jury could find protected activity where further inquiry was warranted); see Part II.B, supra. And the report conveyed in substance what Defendant says a report must: that the

practice had already left consumers' account histories incomplete and required manual correction of the production database, and it urged an investigation into possible violations of rules governing payment processing and financial record-keeping. Mot. at 12; Compl. ¶¶ 109-111. Section 5567(a)(1) protects information provided to the Bureau by its own terms. 12 U.S.C. § 5567(a)(1). It also protects an employee who "is about to provide" such information, Compl. ¶ 190, and the Director of Engineering asked Plaintiff whether the policy was illegal on a call earlier the same day Plaintiff filed the report, id. ¶¶ 106, 109, 136, supporting an inference that Defendant suspected the report, as does Plaintiff's changed treatment afterward, id. ¶¶ 145, 150. Requiring a completed violation would effectively demand proof of an actual CFPA violation as a condition of protection, which the law does not require. Van v. JP Morgan, slip op. at 17 (protected activity does not require proof of an actual violation); Wadler, 916 F.3d at 1187-88 (same). Defendant itself agrees that § 5567 does not require proof of an actual violation, Mot. at 11, though it asserts that protected activity "requires an actual report of a covered violation." Id. at 14. Because § 5567(a)(1) requires the same reasonable-belief showing as § 5567(a)(4), the analysis in Parts III.C through III.G applies equally under § 5567(a)(1).

**I. The Complaint pleads the subjective component directly.**

The Complaint pleads the belief directly, Compl. ¶¶ 105, 200, and conditions of a person's mind "may be alleged generally." Fed. R. Civ. P. 9(b). Plaintiff objected to Defendant's testing policy repeatedly over years, reported it to the Bureau while employed by Defendant, and asked for anonymity out of fear of being fired. Compl. ¶¶ 97-99, 106, 108-118. Nor must the belief be a settled conclusion: in Van Asdale, testimony from an employee who believed only that an investigation was needed did not defeat the subjective component. 577 F.3d at 1002. Plaintiff's report made the same request. Compl. ¶ 111.

Defendant's contention that the legal basis for Plaintiff's belief was "developed and pleaded later," Mot. at 14, is in substance a challenge to whether Plaintiff held the belief at all, a question of fact that cannot be resolved against Plaintiff on the pleadings. The Complaint alleges that Plaintiff "reasonably believed, at the time of his objections and his report to the Bureau, that the directive and the policy it implemented subjected consumers to unfair, deceptive, or abusive acts or practices prohibited by 12 U.S.C. § 5531." Compl. ¶ 105. The Bureau report itself, written in October 2024 while Plaintiff was still employed, warned that Defendant's practices "may not only harm consumers but could also result in violations of industry regulations governing payment processing and financial record-keeping." Id. ¶ 111. The Complaint also grounds the belief in facts that predate Plaintiff's termination: in 2021, before joining Defendant, Plaintiff filed a consumer complaint with the Bureau and learned that the Bureau prescribes regulations governing consumer payment products, id. ¶ 28; in July 2023, Plaintiff read the Bureau's materials on Regulation E and understood that a Bureau rule governed electronic fund transfers of the kind Defendant processes, id. ¶ 101; and in October 2024, while still employed, Plaintiff called the practice "reckless" in the report, aware that reckless violations carry higher penalties under the Act, id. ¶ 117 (citing 12 U.S.C. § 5565(c)(2)). Those facts describe a belief formed at the time, not one "developed and pleaded later." Mot. at 14.

**J. The question presented is one of first impression, and Rule 12 dismissal of a novel theory is especially disfavored.**

Defendant asks the Court to decide on the pleadings a question no reported decision appears to have addressed: whether a QA engineer at a consumer payments company can reasonably believe that the employer's test and release practice for consumer payment software violates a law within the Bureau's jurisdiction. See Mot. at 11-13. Defendant cites no § 5567 decision at all. The

absence of authority reflects "the relative dearth of CFPA jurisprudence," not a rejection of claims like this one. Slawin, Dkt. No. 197 at 14.

The Ninth Circuit disfavors resolving novel theories on the pleadings. In McGary v. City of Portland, 386 F.3d 1259, 1260-61 (9th Cir. 2004), it reversed a Rule 12(b)(6) dismissal of a disability-accommodation claim. The court acknowledged that the claim raised novel issues in the circuit and held that its falling outside existing case law was no reason to dismiss it; dismissal on the pleadings is especially disfavored when a complaint advances a novel legal theory best assessed after factual development. Id. at 1270 (citing Elec. Constr. & Maint. Co. v. Maeda Pac. Corp., 764 F.2d 619, 623 (9th Cir. 1985)).

The principle is not limited to any area of law: McGary drew it in part from Maeda, a contract case, which took it from the leading treatise's discussion of Rule 12(b)(6) generally. Maeda, 764 F.2d at 623 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1357, at 601-03 (1969)).

Objective reasonableness, in particular, cannot be resolved on this record. In Moyo v. Gomez, 40 F.3d 982, 984-85 (9th Cir. 1994), the Ninth Circuit reversed the dismissal of a retaliation claim because, on the face of the complaint, the employee could reasonably have believed a violation occurred, and it noted that a reasonable mistake may be one of fact or of law. In Van Asdale, the Ninth Circuit reversed summary judgment because, on the facts viewed in the employees' favor, a jury could find their belief reasonable. 577 F.3d at 1000-02. On remand, a jury found for the employees, and the Ninth Circuit affirmed. Van Asdale v. Int'l Game Tech., 549 F. App'x 611, 613-14 (9th Cir. 2013). And a court applying § 5567 has held that objective reasonableness may be decided as a matter of law "only when no reasonable person could believe there was conduct that fit into one of the listed categories," and denied dismissal. Slawin v. Bank of Am. Merch. Servs., No. 1:19-cv-04129-AT, Dkt. No. 47 at 26-27 (N.D. Ga. Sept. 30, 2020) (internal quotation marks omitted). That the Slawin plaintiff had almost

twenty-five years of compliance experience, id. at 27, does not distinguish the case: reasonableness is measured against a reasonable person with the employee's own training and experience. Wadler, 916 F.3d at 1187-88; see Part II.B, supra. Here, Plaintiff holds bachelor's and master's degrees in computer science and tested the very payment features at issue. Compl. ¶¶ 27, 32.

**K. The Complaint pleads that Defendant knew of the protected activity.**

Defendant does not dispute that its personnel knew of Plaintiff's objections. Mot. at 6, 15. It argues only that the objections were not protected activity. Id. at 15-16. So if the objections were protected, as Parts III.A through III.J show, the Complaint pleads that Defendant knew of protected activity.

The Complaint also ties that knowledge to the decision. Defendant's own explanation of the selection, that it was "driven by (among other things) his habit of logjamming Respondent's non-negotiable application testing process," describes the decisionmakers acting on the objections themselves. Compl. ¶ 127. The Chief Technology Officer, who authorized the termination, was among the recipients of Plaintiff's objections. Id. ¶¶ 97, 128. Plaintiff's supervisor singled Plaintiff out in writing when deferring automation, "Especially with Jon." Id. ¶¶ 86, 122. The Director of Engineering heard Plaintiff object more than once, asked Plaintiff whether the policy was illegal, conducted the termination call, and, on information and belief, provided input on the selection. Id. ¶¶ 99, 106, 109, 129, 135; see Staub v. Proctor Hosp., 562 U.S. 411, 419-22 (2011) (employer liable where a supervisor, acting with the prohibited motive and intending to cause an adverse action, proximately caused the decision of an unbiased decisionmaker). Defendant's argument that the decisionmakers did not know of the confidential October 2024 report, Mot. at 15, concerns only that report; it does not bear on whether the internal objections were known. And the Director of Engineering's suspicion of the report, see Part III.H, supra, could reach the

decision even if the CTO did not know of the report. Staub, 562 U.S. at 419-22.

**L. The statute's limits answer Defendant's floodgates concern.**

Defendant warns that, unless the motion is granted, "every internal quality-assurance disagreement at any company offering a consumer financial product would become protected activity." Mot. at 10. This case is different in three respects. The practice governed a consumer financial product, the software that moves tenants' rent, Compl. ¶¶ 39, 57; Dkt. 20 ¶ 39; a defect the practice produced had already reached consumers, Compl. ¶¶ 68-74; and those consumers were captive, unable to avoid the injury or reverse a payment, id. ¶¶ 53-55, 57. The statute supplies the rest: the belief must be reasonable, and the employer may still prove that it would have acted anyway. 12 U.S.C. § 5567(a)(4), (c)(3)(C). Defendant's rule also proves too much. If, as the motion asserts, § 5531 does not reach testing decisions, Mot. at 11, 13, then a payments company could release features with no testing at all, leaving tenants to discover every defect in their own rent payments, and an employee who objected would have no protection under § 5567. Until a feature's automated tests existed, Defendant's practice required no regression testing of it, manual or automated. Compl. ¶¶ 2, 74.

**M. Any perceived deficiency should be cured by amendment, not dismissal.**

Leave to amend should be freely given when justice so requires, Fed. R. Civ. P. 15(a)(2). Where a motion to dismiss is granted, leave to amend should be granted unless it is clear the complaint cannot be saved by amendment, Polich v. Burlington N., Inc., 942 F.2d 1467, 1472 (9th Cir. 1991), principles this Court's Standing Order expressly adopts; it adds that the moving party "should agree to any amendment that would cure the defect." Standing Order (Dkt. 9) § G.1. A pro se plaintiff in particular is entitled to amend unless the pleading could not possibly be cured. Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en

banc). Defendant's own authority holds that absent prejudice or a strong showing on another Foman factor, a presumption favors granting leave. Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003). Defendant identifies no prejudice, delay, or prior failure to cure; this is the first challenge to the first complaint. Defendant's futility argument assumes the Complaint already pleads every relevant communication. Mot. at 16-17. It does not. Amendment could plead, among other things, the Director of Engineering's September 2024 written report to the Chief Technology Officer about Plaintiff's objections, and the CTO's response. Defendant also contends that, because the Bureau report was confidential, no amendment could show the decisionmakers knew of it. Mot. at 17. But the standard is whether the employer "knew or suspected, actually or constructively," the protected activity, Van Asdale, 577 F.3d at 996 (internal quotation marks omitted); accord Mot. at 15; Defendant itself calls the report the only arguably protected act directed to a covered law, Mot. at 15; and an amendment could plead facts supporting an inference of suspicion, including the only time the CTO addressed automation at a company all-hands meeting, weeks after Plaintiff's 2024 report to the Bureau. Amendment would not be futile.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion for Judgment on the Pleadings (Dkt. 21) or, in the alternative, grant leave to amend.

Respectfully submitted,

Dated: November 10, 2026

Jonathan Beacher

Jonathan Beacher
Plaintiff in Pro Se

# CERTIFICATE OF COMPLIANCE

The undersigned, Plaintiff in Pro Se, certifies that this brief contains 8,177 words and 25 pages of text, which complies with the page limit set by the Standing Order for Civil Cases Assigned to Judge Anne Hwang dated August 20, 2026 (Dkt. 9).

Respectfully submitted,

Dated: November 10, 2026

Jonathan Beacher
Plaintiff in Pro Se