# EXHIBIT 2

In re Hello Digit, LLC, File No. 2022-CFPB-0007, Consent Order (Aug. 10, 2022)

(Excerpts: pages 1, 6-8, 13-15)

**UNITED STATES OF AMERICA**
**CONSUMER FINANCIAL PROTECTION BUREAU**

ADMINISTRATIVE PROCEEDING File No. 2022-CFPB-0007

| In the Matter of: HELLO DIGIT, LLC | **CONSENT ORDER** |
|---|---|

The Consumer Financial Protection Bureau (Bureau) reviewed the conduct of Hello Digit, Inc. in offering and providing consumers an automated-savings tool, which Digit marketed as a way to effortlessly save the "perfect" amount of money every time without thinking about it, and identified the following law violations: Digit engaged in deceptive acts and practices in violation of §§ 1031 and 1036 of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1)(B), by misrepresenting to consumers that its automated-savings tool saved the perfect amount every time, that it would reimburse all overdraft fees caused by the tool, and that Digit did not generate revenue from interest accrued on consumer funds held by Digit. Under §§ 1053 and 1055 of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5563, 5565, the Bureau issues this Consent Order (Consent Order).

8. Based on its algorithm, Digit initiates automatic electronic-fund transfers, called "autosaves," to move money from consumers' checking accounts to interest-bearing, "for the benefit of" accounts held in Digit's name at third-party institutions ("Digit Savings Accounts"). The money transferred by Digit into Digit Savings Accounts goes toward goals set by the consumer (*e.g.*, vacations) or a default "Rainy Day Fund."

9. To transfer funds, Digit uses the Automated Clearing House (ACH) network, which takes 1–3 days to process electronic-fund transfers.

10. Starting in April 2017, Digit began charging consumers a subscription fee of $2.99 a month for its savings service. Digit increased the monthly fee to $5 in mid-2019.

<u>Digit Deceptively Marketed that It Saves the Perfect Amount and Covers All Overdraft Fees Incurred by Digit Users</u>

11. One of Digit's messaging themes to consumers is that its automated-savings tool effortlessly saves "the perfect amount" for consumers through its algorithm. But Digit knows that it does not save the perfect amount every day—in fact, the Company's autosaves frequently cause its users' checking accounts to overdraft and incur overdraft fees charged by consumers' banks.

12. Until at least mid-2020, Digit's website headlined: "Save money, without thinking about it. Digit analyzes your spending and automatically saves the perfect amount every day, so you don't have to think about it." At other times, Digit billed itself as a company that "never transfers more than you can afford."

13. Similarly, on the GooglePlay welcome screen to download Digit's app, until late 2021 Digit represented to consumers: "Save Money. Pay off Debt. No Overdrafts."

14. But since its inception, Digit knew that its algorithm was not "perfect" and had limitations that hampered the Company's ability to precisely predict an appropriate amount to withdraw from consumers' checking accounts. Digit also knew that its savings debits from consumers' accounts routinely caused overdrafts, resulting in overdraft fees for consumers.

15. Digit was aware of the underlying reasons its algorithm triggers overdrafts, which include, among other things, (i) that Digit's algorithm relies on consumers' account transactions that Digit knows may be stale or inaccurate due to time lags in the banking system or inaccurate data being provided by third-party partners; and (ii) the fact that Digit cannot predict all customer, bank, and ACH behavior.

16. Digit receives complaints about overdrafts daily. Digit estimates that approximately 1–2% of Digit users experience overdrafts as a result of using the service, and the company has received nearly 70,000 overdraft-reimbursement requests since 2017.

17. In one instance, Digit's customer support agent characterized a consumer's complaint as "user incurred overdrafts, misled by the 'no overdraft guarantee' language at sign up." In another instance, one consumer complained: "When I signed up for digit it said it was guaranteed to not overdraft your account. I just wanted to bring it to someone's attention because I didn't think that was supposed to happen." A Digit customer support agent remarked of this complaint: "another user calling us out on that, [I] do feel like 'no overdraft guarantee' is misleading and should be changed."

18. As a companion to Digit's representation that it will always save "the perfect amount" for consumers, Digit also represented to consumers that, in the unlikely event that it caused an overdraft, the company would reimburse all overdraft fees incurred by Digit users.

19. Digit sometimes stated, without qualification, that it has a "no-overdraft guarantee . . . we believe [so] strongly in our ability to safely identify money you don't need that if we overdraft your account, we'll pay the fee."

32. Contrary to Digit's representations, Digit did earn interest from consumers' funds it held and did not return the entirety of that interest to consumers in the form of a savings bonus.

33. Since 2017, Digit has retained significant net interest income from consumer funds held in Digit Savings Accounts after paying out savings bonuses to users.

Findings and Conclusions as to Misrepresentation about Savings Amounts and Overdraft Reimbursements

34. The CFPA prohibits covered persons from engaging in any deceptive act or practice. 12 U.S.C. §§ 5531(a), 5536(a)(1)(B). A representation or omission is deceptive if it is likely to mislead consumers acting reasonably under the circumstances and is material.

35. In numerous instances since 2017, Digit told consumers that it would save the "perfect amount," that it would only transfer amounts that consumers could afford, and that its service would result in "No Overdrafts." Digit also represented to consumers that, in the unlikely event of overdrafts, it had a "no overdraft guarantee" and that "the fee is on us if we save too much."

36. But in fact, Digit's withdrawals from consumers' accounts routinely caused overdrafts to consumers' accounts and Digit did not reimburse consumers for all the overdraft fees that Digit's autosaves caused.

37. Digit's representations are material because the likelihood that an automated-savings app will trigger bank fees is highly relevant to a consumer decision-making about whether to enroll in such a service.

38. Therefore, Digit's representations described in Paragraph 35 constitute deceptive acts or practices in violation of sections 1031(a) and 1036(a)(1)(B) of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

Findings and Conclusions as to Misrepresentation about Interest Earned by Digit on Consumer Funds

39. The CFPA prohibits covered persons from engaging in any deceptive act or practice. 12 U.S.C. §§ 5531(a), 5536(a)(1)(B). A representation or omission is deceptive if it is likely to mislead consumers acting reasonably under the circumstances and is material.

40. As early as mid-2017, Digit represented to consumers that it did not collect revenue from interest earned on consumers' funds held in Digit Savings Accounts, but instead returned that interest to consumers in the form of a savings bonus.

41. But Digit did, in fact, collect revenue from interest because it returned only a portion of the earned interest to consumers as a savings bonus.

42. Digit's representations were about a central characteristic of its service and were therefore material to consumers in deciding whether or not to sign up for the service.

43. Therefore, Digit's representations described in Paragraph 40 constitute deceptive acts or practices in violation of sections 1031(a) and 1036(a)(1)(B) of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

## CONDUCT PROVISIONS

## V.

## Prohibited Conduct

**IT IS ORDERED**, under §§ 1053 and 1055 of the CFPA, that:

44. Respondent and its officers, agents, servants, employees, and attorneys who have actual notice of this Consent Order, whether acting directly or indirectly, may not misrepresent in Marketing Materials or Terms and Conditions, expressly or impliedly:

a. Whether Respondent's automated-savings tool will cause an overdraft fee;

b. Whether and in what circumstances Respondent will reimburse an overdraft fee caused by Respondent's automated-savings tool;